# EXHIBIT A

GREGORY C. BELMONT
℅ CereBel Legal Intelligence
157 East 86th Street, 4th Floor
New York, NY 10028
Telephone (631) 506-8464
belmont@cerebel.law

**IN THE UNITED STATES DISTRICT COURT**

**DISTRICT OF UTAH - CENTRAL DIVISION**

| | |
|---|---|
| BAM FRANCHISING, INC., a Delaware corporation,<br><br>Plaintiff,<br><br>vs.<br><br>DOES 1–10,<br><br>Defendants. | **[PROPOSED] INTERVENOR'S OBJECTIONS UNDER RULE 72(a) TO DISCOVERY ORDER (ECF 6), WITH REQUEST FOR EXPEDITED CONSIDERATION**<br><br>Case No. 2:26-cv-00895-DBB-DBP<br><br>District Judge David Barlow<br>Magistrate Judge Dustin B. Pead |

**RELIEF REQUESTED AND GROUNDS**

Gregory C. Belmont ("Proposed Intervenor") objects under Federal Rule of Civil Procedure 72(a) to the Order Granting Ex Parte Motion for Expedited Discovery (ECF 6) and asks the District Judge to set aside the order to the extent it authorizes discovery of records identifying the operators, editors, authors, or sources of thebammap.com, or to modify it as set out in Section V. Alternatively, he asks the Court to return the matter to the Magistrate Judge for consideration on a developed record, with the interim restrictions on review, use, and further disclosure of identifying records continuing until further order. As DUCivR 37-1(f)(2) requires, Proposed Intervenor requests expedited consideration.

The grounds are five. BAM's showing does not adequately explain the breadth and timing of the identifying discovery requested. The authorization leaves recipients open-ended and lacks specific account and date restrictions. It does not address the asserted First Amendment and confidential-source interests. It creates no specific account-holder or source-notice procedure before production. And the attached requests may reach communication contents whose disclosure the Stored Communications Act prohibits.

## I. INTRODUCTION

BAM asked for discovery "to ascertain the identity and contact information of Defendants for service of process." ECF 3 at 2. The subpoenas it attached do something else. They define their target as everyone who operated, edited, or "authored content for" thebammap.com, a news site that BAM's own complaint describes as a recipient of the Does' disclosures, and they demand the site's payment records, posting logs, upload files, and correspondence with its host. ECF 3, Exs. B–C, Attach. A, Defs. 1, 7, Reqs. 1–8; Compl. ¶ 67.

The order granting that request issued two days later, ex parte, on an unverified complaint and a motion supported by no declaration. ECF 6. No one with an interest in the site or its sources was heard. These objections present the considerations the Magistrate Judge had no occasion to weigh.

## II. RELEVANT FACTS

**A. The complaint.** BAM sued ten Does on September 25, 2026, for breach of contract and trade-secret misappropriation, and prays for damages. Compl. ¶¶ 63–97 & Prayer. It alleges that one or more of them are current or former franchisees, employees, or others who disclosed confidential information to third parties, "including the operators of thebammap.com." *Id.* ¶¶ 14,

67. It alleges that BAM's review of its own Google Drive audit logs identified "at least one current or former franchisee as a suspected source," that its investigation has "narrowed" the field, and that Google and Slack hold records that "may identify" who took the documents. *Id.* ¶¶ 45, 54, 58–59. It alleges that the site described a source as "protected," that a franchisee reached the site through its anonymous right-of-reply channel, and that BAM's sources relied on "the websites' anonymity protections." *Id.* ¶¶ 27, 36–37, 55. The complaint is not verified.

**B. BAM's earlier contacts with the site.** BAM has reached the site before. On July 28, 2026, it wrote to the site demanding "the identities of all persons who provided or published the materials"; the site declined. Declaration of Gregory C. Belmont ("Decl.") ¶ 5. In September, BAM sent a takedown notice to the site's host, which relayed it, and the site removed the flagged material within three days. Compl. ¶¶ 29–30. BAM also asked the host to preserve the site's records. *Id.* ¶ 34.

**C. The motion and subpoenas.** On September 28, BAM moved ex parte for leave to subpoena Vercel, Inc., GoDaddy.com, LLC, and unnamed others. ECF 3. The motion attached no declaration. Its proposed order would have authorized requests for "records containing the identity and contact information for the unidentifiable Doe Defendants." ECF 3-1 ¶ 2. The attached subpoenas go further. They define "Website Operator" as anyone who "registered, created, owned, operated, managed, administered, maintained, edited, authored content for, or otherwise controlled" the site, and they seek identity and payment records, access logs, upload records, all host communications, takedown files, deployment history, and every other provider the site uses. ECF 3, Exs. B–C, Attach. A, Defs. 1, 7, Reqs. 1–8.

**D. The order.** ECF 6 found good cause because BAM alleges harm and because "Plaintiff has no other means to identify defendants, having exhausted its internal investigation methods," citing complaint ¶ 45. ECF 6 at 2 & nn.6–7. It noted that "BAM represents" the subpoenas will assist in obtaining the necessary information. *Id.* at 2. It authorized subpoenas on "third-parties, including Vercel, Inc. and Go.Daddy.com," for "subscriber information, account records, IP address logs, deployment records and any other information that might allow BAM to identify and properly serve an amended complaint that contains the defendants' true identities and capacities." *Id.* It contains no provision for notice, objection, or preservation, and it does not address the First Amendment or any privilege.

## III. STANDARD OF REVIEW AND TIMELINESS

The District Judge must "modify or set aside any part of the order that is clearly erroneous or is contrary to law." Fed. R. Civ. P. 72(a). These objections are submitted within 14 days of ECF 6, together with Proposed Intervenor's motion to intervene, and he asks that they be accepted as of the date submitted. They raise arguments not presented below because the motion was decided ex parte, and Proposed Intervenor submits them promptly after learning of ECF 6. Because an objection may be sustained only after the opposing party has had an opportunity to respond, DUCivR 72-2(b)(2), Proposed Intervenor asks the Court to set an expedited response deadline.

## IV. OBJECTIONS

**A. The showing does not justify identifying discovery of this breadth and timing.** Good cause is BAM's burden. *See* ECF 6 at 1–2. The complaint is unverified, and ECF 3 attached no declaration. The order's conclusion that the subpoenas will assist rests on what

"BAM represents." ECF 6 at 2. At least two of the four District of Utah orders BAM cited rested on declarations. *Arista Records LLC v. Does 1-19*, No. 2:07-cv-00971-TS, 2008 WL 10874285 (D. Utah Jan. 11, 2008) (unpublished) (ECF 8 at 1); *1524948 Alberta Ltd. v. John Doe 1-50*, No. 2:10-cv-00900-TS, 2010 WL 3743907 (D. Utah Sept. 23, 2010) (unpublished) (ECF 10 at 2 & n.4).

The no-other-means finding fares no better on this record. It cites complaint ¶ 45, ECF 6 at 2 n.7, which alleges that BAM's own Drive logs have already produced "at least one current or former franchisee as a suspected source." Compl. ¶ 45. Paragraph 54 adds a general allegation that BAM has exhausted the internal investigation reasonably available to it and "narrowed" the field, *id.* ¶ 54, and the complaint alleges that Google and Slack hold records that "may identify" who took the documents, *id.* ¶¶ 58–59. Nothing in the record explains the limits of that investigation, or why those sources cannot identify the alleged disclosers before the publisher and its sources are exposed. Yet ECF 3 sought subpoenas to none of them. It reached one website: the news site that removed the flagged material within three days of BAM's notice. Compl. ¶¶ 29–30. Nor does any risk of lost evidence require immediate disclosure. BAM asked Vercel to preserve these records more than two weeks before moving, *id.* ¶ 34, and its assertion that providers do not retain logs "indefinitely" names no retention period, ECF 3 at 4. A targeted preservation order would answer that risk without disclosing anything. On this record, the finding cannot support identifying discovery of this breadth. ECF 3 also invoked the site's report of the dates and hotel for BAM's owners' conference as "a significant physical-security concern." ECF 3 at 4. The order did not rely on it. BAM identified no threat or incident, offered no

declaration, and did not explain how identifying every operator, editor, author, or source would address a security concern.

**B. The authorization exceeds an identification inquiry.** ECF 6 permits subpoenas on "third-parties, including Vercel, Inc. and Go.Daddy.com," for listed categories "and any other information that might allow BAM to identify" the defendants. ECF 6 at 2. The recipient list is open-ended, the order specifies no accounts or date ranges, and its listed categories conclude with a broad catchall. The subpoenas BAM attached reach every editor and author of the site, all host communications, takedown files, and every other provider the site uses, ECF 3, Exs. B–C, Attach. A, Def. 7, Reqs. 4–8, which is more than even BAM's own proposed order sought, ECF 3-1 ¶ 2. Little of that identifies a franchisee except by exposing the site's sources.

The authority the order cites for identification discovery involved a defendant alleged to be the website's unlawful operator. *Volkswagen Grp. of Am., Inc. v. Doe*, No. 2:22-cv-00438, 2022 U.S. Dist. LEXIS 124268 (D. Utah July 12, 2022) (unpublished) (ECF 10 at 2) (defendant alleged to be "unlawfully operating a website designed to impersonate a VW dealer"); *see* ECF 6 at 2 n.5. BAM's authorities likewise targeted the alleged wrongdoers themselves: Doe defendants accused of infringement, with subpoenas limited to records identifying each of them, *Arista*, ECF 8 at 2–3; the owners and authors of a website sued for its own statements, *1524948 Alberta*, ECF 10 at 1–2; and the sellers accused of selling pirated copies, *Living Scriptures, Inc. v. Doe(s)*, No. 1:10-cv-00182-DB, 2010 WL 4687679, ECF 8 at 3–5 (D. Utah Nov. 10, 2010) (unpublished). Here, BAM's pleading treats the site's operators as the "unauthorized third parties" to whom the Does disclosed, not as the Does, Compl. ¶ 67, and pleads no defamation, trademark, or copyright claim, *id.* ¶¶ 63–97. Yet BAM's complaint says what the subpoenas are for: Vercel's records

"may identify the operator of thebammap.com website and the individuals who provided Plaintiff's Confidential Information to that website." *Id.* ¶ 56. Where the operator is the defendant, identifying the operator identifies the defendant. Here, without a demonstrated connection between each requested category and alleged misconduct, the discovery risks exposing a publisher and, through it, its sources. Any authorization should name each recipient and specify the accounts, categories, and periods that BAM's showing supports. Fed. R. Civ. P. 26(b)(1), (b)(2)(C).

**C. The order did not apply the First Amendment balancing that compelled disclosure requires.** The identifying requests warrant an assessment of the asserted protections and BAM's demonstrated need.

**1. Compelled disclosure triggers scrutiny.** An author's decision to remain anonymous "is an aspect of the freedom of speech protected by the First Amendment," and anonymity "is a shield from the tyranny of the majority" that protects speakers "from retaliation." *McIntyre v. Ohio Elections Comm'n*, 514 U.S. 334, 342, 357 (1995). That protection extends "fully to communications made through the medium of the internet," *Doe v. Shurtleff*, 628 F.3d 1217, 1222 (10th Cir. 2010) (upholding a disclosure requirement in light of statutory limits on the use and dissemination of the identifying information). A court order compelling disclosure is state action even between private litigants, and when the information sought implicates First Amendment interests the court must balance them against the need for disclosure before ordering it. *Grandbouche v. Clancy*, 825 F.2d 1463, 1466–67 (10th Cir. 1987). This District has quashed subpoenas seeking to identify anonymous online speakers. *Koch Indus., Inc. v. John Does 1–25*,

No. 2:10-cv-01275-DAK, 2011 WL 1775765, at *10 (D. Utah May 9, 2011) (unpublished) (ECF 26 at 17–18) (quashing subpoenas after finding the claims against the speakers deficient).

Courts in this circuit apply *Grandbouche* even when the anonymous speaker is a defendant, recognizing that "the unmasking of an anonymous party is not something that can be undone." *Farmland Partners Inc. v. Fortunae*, No. 18-cv-02351-KLM, 2020 WL 12575073, 2020 BL 556926, at *3–5, *9 (D. Colo. May 18, 2020) (unpublished). *Farmland* ordered disclosure, but it weighed that the plaintiff sought "to unmask the actual Defendants in the case, not nonparties," and it distinguished cases in which reporters protect their sources. Id. at *9. This case presents both. Whatever the operators' role, the subpoenas also reach editors and authors whom BAM does not accuse of anything. ECF 6 does not address these interests; no one was present to raise them.

**2. Federal privilege law governs, and the affected reporters and sources should have an opportunity to establish the privilege.** The governing-law question arises under Federal Rule of Evidence 501. Where evidence bears on federal and state claims resting on the same alleged misappropriation, a magistrate judge of this Court held that federal privilege law governs, noting that the Tenth Circuit has not resolved the question. *OL Private Counsel, LLC v. Olson*, No. 2:21-cv-00455-DBB, ECF 235 at 4–5 (D. Utah Dec. 19, 2023) (unpublished) (Oberg, M.J.) (citing *Motley v. Marathon Oil Co.*, 71 F.3d 1547, 1551 (10th Cir. 1995)); *see also America West Bank Members, L.C. v. Utah*, No. 2:16-cv-00326-CW-DAO, 2021 BL 352101, ECF 236 at 4–5 (D. Utah Jan. 11, 2022) (unpublished) (Oberg, M.J.) (applying federal privilege law in a federal-question case where the Tenth Circuit had not resolved which law governs evidence relevant to both federal and state claims). Under federal law, the reporter's privilege is not limited

to the institutional press, and compelled disclosure of confidential sources requires weighing the *Silkwood* factors. *Silkwood v. Kerr-McGee Corp.*, 563 F.2d 433, 436–38 (10th Cir. 1977). Courts have applied these protections to online publishers. California's Court of Appeal protected the sources of online news sites that published an unreleased product's trade secrets, under both that State's shield law and the qualified First Amendment privilege. *O'Grady v. Superior Ct.*, 139 Cal. App. 4th 1423, 1467–68 (2006). A privilege claim requires a factual showing, *In re Motor Fuel Temperature Sales Pracs. Litig.*, 641 F.3d 470, 488–90 (10th Cir. 2011), and BAM's own complaint supplies a basis for allowing that showing to be made: a "protected" source, an anonymous right-of-reply channel, and sources who relied on "the websites' anonymity protections." Compl. ¶¶ 27, 36–37, 55. Utah's rule, whose advisory committee note cites *Silkwood*, offers persuasive guidance. That note observes that the lone pamphleteer "may have modern-day counterparts on the internet." The rule lets a reporter or confidential source prevent another person from disclosing information "likely to lead directly to the disclosure of the identity" of a confidential source unless the requester proves by clear and convincing evidence that disclosure is necessary to prevent substantial injury or death, which the note explains is not limited to bodily injury. Utah R. Evid. 509(a)(2), (b) & advisory committee's note (2008). Requests 3, 4, and 7 reach records that may lead directly to a source's identity. And on timely motion, the court for the district where compliance is required must quash or modify a subpoena that requires disclosure of privileged or other protected matter, if no exception or waiver applies. Fed. R. Civ. P. 45(d)(3)(A)(iii). Those protections belong to the reporter and the source, which is why the persons entitled to assert them should have notice and an opportunity to do so before any production. Because notice to an account holder may not reach every affected source, and an

account holder's silence does not establish that a distinct source has waived a valid protection, Proposed Intervenor asks that no identifying record be produced, even if no objection is filed, without a further category-specific ruling.

**3. The *Silkwood* factors weigh against disclosure on this record.** Before compelling disclosure, a court weighs whether the requester has tried to obtain the information elsewhere, whether it goes to the heart of the matter, whether it is of certain relevance, and the type of controversy. *Silkwood*, 563 F.2d at 438. The question is whether each category of publisher records is necessary to identifying the alleged leakers and justified despite the interests it would expose.

**i. Other sources.** BAM has a suspect, a narrowed field, and Google and Slack records it has not shown to be inadequate. Compl. ¶¶ 45, 54, 58–59.

**ii. Heart of the matter.** The identities of the site's editors and authors are not elements of any claim BAM pleads. *Id.* ¶¶ 63–97. Identifying an actual leaker may be central to BAM's case; BAM has not shown why identifying particular editors, authors, or other publication personnel is necessary to that inquiry.

**iii. Certain relevance.** The site's records may identify no Doe at all. BAM alleges that the Does disclosed its information either to the site or "to third parties who then provide it to thebammap.com." *Id.* ¶ 44. That possibility underscores the need to connect each requested category to a likely path to identifying an alleged wrongdoer.

**iv. Type of controversy.** This is a private civil action alleging breach of contractual confidentiality obligations and misappropriation of trade secrets. BAM’s Prayer expressly seeks monetary relief and generally requests other just and equitable relief. Compl., Prayer ¶¶ 1–2.

Although ¶ 84 asserts that “immediate injunctive relief is required,” BAM has not moved for an injunction as of this filing. That assertion alone does not establish a need for immediate disclosure of journalists’ or sources’ identities. The complaint itself describes the website operators as third-party recipients of the Doe defendants’ disclosures. Id. ¶ 67. These circumstances favor careful scrutiny before compelling disclosure of records identifying the publisher or its sources.

**4. The solicitation allegation does not change the analysis.** BAM alleges "the solicitation of additional leaked documents." Compl. ¶ 94. *Bartnicki* protected the publication of truthful information on a matter of public concern by recipients who obtained it lawfully and took no part in the underlying illegality, while reserving whether its rule reaches trade secrets. *Bartnicki v. Vopper*, 532 U.S. 514, 525, 533–35 (2001). It does not resolve this case. But it holds that a source's unlawful conduct does not by itself strip a publisher of First Amendment protection, *id.* at 535, and BAM's allegation should be tested against the conduct actually alleged and the records actually sought, after notice to those entitled to respond. BAM chose not to sue the site, and an order authorizing discovery to identify defendants should be tailored so that it does not reach the site's newsgathering beyond what that purpose requires.

**D. The order provides no procedure for affected persons to seek protection before production.** *Carroll* held that there is "no place within the area of basic freedoms guaranteed by the First Amendment" for ex parte restraining orders absent a showing that notice is impossible. *Carroll v. President & Comm'rs of Princess Anne*, 393 U.S. 175, 180 (1968). ECF 6 is a discovery order, not an injunction, but compelled disclosure of anonymous speakers and their sources raises a related concern. BAM's only reason for proceeding ex parte was that the Does

"are unknown and therefore cannot be served with notice of this Motion." ECF 3 at 3. That explains why no Doe was served. It does not explain why the order provides no procedure through which those connected to the site could seek protection before production, when BAM has reached the site before, through its host in September and directly in July. Compl. ¶¶ 29–30; Decl. ¶ 5. Rule 45(a)(4) requires notice to the parties before a document subpoena is served, and DUCivR 45-1 delays service on the nonparty until after that notice. With no other party in the case, those protections operate for no one, and only the Court can supply them.

Three of the four District of Utah orders BAM cited built in a window to object. *Arista*, ECF 8 at 3 (fifteen days after notice for each Doe, and ten days for the provider because the motion was ex parte); *1524948 Alberta*, ECF 10 at 4 (thirty-day return date, with preservation pending any motion to quash); *Living Scriptures*, ECF 8 at 5 (twenty days to move to quash). This District has also recognized that third parties may object to production based on their own privilege, and has directed notice to an absent privilege holder, with time to assert the privilege, before its information is produced. *America West*, ECF 236 at 12 n.3, 18, 23–24. ECF 6 contains no comparable provision. Without one, identifying records may be produced before affected persons can invoke the protections that Rule 45 and the First Amendment preserve.

**E. The authorization should exclude disclosures the Stored Communications Act prohibits.** Requests 4 and 5 seek upload records and "[a]ll Communications between the Hosting Provider and the Website Operator." ECF 3, Exs. B–C, Attach. A, Reqs. 4–5. ECF 6's "any other information" clause would permit them. To the extent those requests reach the contents of communications held by a covered electronic-communication or remote-computing service under the statute's conditions, the Stored Communications Act bars disclosure absent a

statutory exception, and it contains no general exception for civil subpoenas. 18 U.S.C. § 2702(a)–(b); *see O'Grady*, 139 Cal. App. 4th at 1440–47 (holding that the Act barred enforcement of civil subpoenas for such contents). Whether the statute applies depends on the provider's role and the record: upload metadata, public material, and a provider's own correspondence may stand differently, and subscriber and other non-content records are treated differently. 18 U.S.C. § 2702(c)(6). Any modified authorization should expressly preserve the statute's limits and exclude material whose disclosure it prohibits.

## V. RELIEF REQUESTED

Proposed Intervenor asks the District Judge to set aside ECF 6 to the extent it authorizes discovery of records identifying the operators, editors, authors, or sources of thebammap.com. Alternatively, he asks the Court to modify ECF 6 to require that any renewed request be served on Proposed Intervenor and supported by a declaration explaining BAM's own tracing, including through its Google Drive and Slack records; require that any such subpoena name the recipient, account, categories, and date range; exclude material whose disclosure the Stored Communications Act prohibits; require delivery of the subpoena and order to the affected account holder, including through the provider, with twenty-one days to seek protection; preserve each recipient's own objections under Rule 45; require that records be preserved meanwhile; permit affected account holders, reporters, and sources to seek protection, with production suspended while a timely application is decided, and to submit identifying information for the Court's review only, with service of identifying material deferred pending a ruling; provide that no identifying record be produced, even if no objection is filed, without a further ruling on category-specific findings, with in camera review as needed; and limit use of any production to

this case, with restrictions on further disclosure, return or destruction after final resolution, including appeal, and counsel-only access where justified, with redacted copies to Proposed Intervenor sufficient for his participation. As a further alternative, Proposed Intervenor asks the Court to return the matter to the Magistrate Judge for consideration on a developed record, with the interim restrictions on review, use, and further disclosure of identifying records continuing until further order.

DATED this 1st day of October, 2026.

Respectfully submitted,

/s/ Gregory C. Belmont
Gregory C. Belmont
Proposed Intervenor, Pro Se

**CERTIFICATE OF COMPLIANCE**

I, Gregory C. Belmont, certify that these objections do not exceed fifteen pages or 4,650 words and comply with DUCivR 72-2(a).

/s/ Gregory C. Belmont
Gregory C. Belmont