Matthew J. Orme (13323)
Kyle K. Tucker (19720)
**DENTONS DURHAM JONES PINEGAR P.C.**
111 South Main Street, Ste. 2400
Salt Lake City, UT 84111
(801) 415-3000
matt.orme@dentons.com
kyle.tucker@dentons.com

*Attorneys for Plaintiff BAM Franchising, Inc.*

**IN THE UNITED STATES DISTRICT COURT**
**DISTRICT OF UTAH, CENTRAL DIVISION**

| | |
|---|---|
| BAM FRANCHISING, INC., a Delaware corporation,<br><br>Plaintiff,<br><br>vs.<br><br>DOES 1-10,<br><br>Defendants. | **PLAINTIFF'S MEMORANDUM IN OPPOSITION TO PROPOSED INTERVENOR GREGORY BELMONT'S EXPEDITED MOTION TO STAY THE DISCOVERY ORDER IN PART PENDING RESOLUTION OF LIMITED INTERVENTION AND RULE 72(A) OBJECTIONS**<br><br>Case No. 2:26-cv-00895-DBB-DBP<br><br>Judge David Barlow<br><br>Magistrate Judge Dustin B. Pead |

Pursuant to DUCivR 7-1 and the Court's October 5, 2026 Docket Order ("Docket Order"), Dkt. No. 10, Plaintiff BAM Franchising, Inc. ("BAM") submits this Memorandum in Opposition to the Expedited Motion to Stay the Discovery Order in Part Pending Resolution of Limited Intervention and Rule 72(a) Objections (the "Motion to Stay"), Dkt. No. 9, filed by proposed intervenor Gregory C. Belmont ("Belmont").

## INTRODUCTION AND PREFERRED DISPOSITION

This case is fundamentally a commercial dispute. BAM alleges that one or more franchisees, employees, or others bound by confidentiality obligations disclosed BAM's Operations Manual, store-level financial analyses, and other internal franchise-system materials in breach of their agreements and in violation of state and federal trade-secret law. Compl. ¶¶ 11, 14–16, 63–97, Dkt. No. 1. The Court authorized limited, pre-conference discovery so BAM can identify and serve the unknown Doe Defendants. *See* Order Granting Ex Parte Mot. for Expedited Disc., Dkt. No. 6 ("Discovery Order").

Belmont is not a party, a subpoena recipient, a website operator, or a source. *See* Decl. of Gregory C. Belmont ¶¶ 8, 10–11, Dkt. No. 8-2 ("Belmont Decl."). By his own account, he is a reader of the website thebammap.com, and he has no relationship with the site, its operators, or anyone who supplies it. *See id.* ¶¶ 5–8, 10–11. He seeks to stay discovery directed at third-party hosting providers based on predicted decisions by unidentified people. Motion to Stay at 4. He lacks standing to obtain that relief, he is not a party entitled to seek it under DUCivR 72-2(c), and the persons who hold any interest in the subpoenaed records have their own remedies under Federal Rule of Civil Procedure 45. The Motion to Stay should be denied.[1]

---

[1] The Court's Docket Order requested that BAM "file a Response or Notice of Non-Opposition, to Movant Gregory C. Belmont's Motion to Stay [9] no later than October 7, 2026." *See* Docket Order. Because the Motion to Stay relies in part on Belmont's likelihood of success on his related Expedited Motion to Intervene for the Limited Purpose of Seeking a Stay and Review of Discovery Order, Dkt. No. 8 ("Motion to Intervene"), BAM addresses some of the arguments raised in the Motion to Intervene. BAM respectfully reserves the right to file a response to the Motion to Intervene within the time prescribed by DUCivR 7-1 based upon the date of service, or upon further order of the Court.

# BACKGROUND

## A. BAM's Claims

BAM franchises retail stores under the "Bricks & Minifigs" brand. Compl. ¶ 9. It maintains confidential franchise-system materials, including its Franchisee Training & Operations Manual, store-level performance workbooks, internal franchisee communications, and a proprietary knowledge base. *Id.* ¶ 11. BAM's franchise agreements require franchisees to keep that information confidential during and after the franchise term. *Id.* ¶¶ 15–16.

Beginning in May 2026, BAM's confidential materials were published on third-party websites, including thebammap.com and bamapsmanual.com. *Id.* ¶ 17. The disclosed materials include internal communications, sales and performance data, and the full Operations Manual. *Id.* ¶¶ 19–26, 31–32. BAM alleges that the pattern and content of these disclosures indicate that at least one person with system access has been providing the materials to outsiders. *Id.* ¶ 44. BAM's internal investigation has narrowed, but has not conclusively identified, the source(s). *Id.* ¶¶ 45, 53–55. BAM asserts claims for breach of contract, including the implied covenant of good faith and fair dealing, and for misappropriation of trade secrets under state and federal law. Compl. ¶¶ 63–97. Each claim is directed at the persons who owed BAM confidentiality obligations. *See id.* ¶¶ 64–67, 77–78, 90–91.

## B. The Discovery Order

On September 28, 2026, BAM moved for leave to serve third-party subpoenas before the Rule 26(f) conference to identify the Doe Defendants for service of process. Pl.'s Ex Parte Mot. for Expedited Disc. at 1–2, Dkt. No. 3 ("Expedited Motion"). On September 30, 2026, the Court found good cause and authorized subpoenas to third parties, including Vercel, Inc. and

GoDaddy.com, LLC ("Subpoena Recipients"), for information that might allow BAM to identify the defendants and serve an amended complaint. Discovery Order at 2.

### C. Belmont's Motions

Belmont filed motions to intervene and to stay on October 2, 2026. *See* Dkt. Nos. 8, 9. He states that he has read thebammap.com since late June 2026 and intends to continue reading it. Belmont Decl. ¶¶ 5–7. He admits that he does not know who operates or supplies the site, has never contacted them, and has no business, employment, contractual, or social relationship with BAM, any BAM franchisee known to him, the site's operators, or Vercel. *Id.* ¶¶ 8, 10. He seeks an order requiring that any records "that identify, or are likely to identify, the operators, editors, authors, or sources of thebammap.com" be held unopened by BAM's counsel; requiring BAM to send the order to each subpoena recipient within one business day; requiring BAM to file and serve reports on him regarding service and production; and requiring that any request to modify the order be served on him. *See* [Proposed] Interim Order ¶¶ 1–2, 4–5, 7, Dkt. No. 9-1.[2]

---

[2] Belmont has requested intervention in other matters involving BAM, including *BAM Franchising, Inc. et al. v. Schneider et al.*, No. 2:26-cv-00593-DBB-CMR, which was originally filed in Utah's Fourth District Court (Case No. 260402353). *See* Belmont Decl. ¶ 4. Belmont's Motion to Intervene in the *Schneider* matter relied on arguments similar to those raised here, namely Belmont's tangential interest and connection to the case via his following of online content. Belmont did not claim to have any direct connection with the named parties, or any cognizable interest beyond that of an interested bystander. *See generally* Belmont's Refiled Motion to Intervene, No. 2:26-cv-00593-DBB-CMR, Dkt. No. 10, & Ex. A, ¶¶ 2–5.

## ARGUMENT

### I. MR. BELMONT LACKS STANDING TO INTERVENE AND IS NOT A PARTY ENTITLED TO SEEK RELIEF UNDER DUCIVR 72-2(c).

Belmont acknowledges that, because he seeks relief that no party requests, he must establish Article III standing for that relief. Mot. to Intervene at 7; *see also Town of Chester, N.Y. v. Larow Ests., Inc.*, 581 U.S. 433, 439 (2017) ("[A]n intervenor of right must demonstrate Article III standing when it seeks additional relief beyond that which the plaintiff requests."). Belmont must therefore show an injury in fact that is concrete, particularized, and actual or imminent, fairly traceable to the challenged order, and likely to be redressed by the relief requested. *See Lujan v. Defenders of Wildlife*, 504 U.S. 555, 560–61 (1992) (establishing the elements of Article III standing); *see also Kane Cnty. v. United States*, 928 F.3d 877 (10th Cir. 2019). He has not made that showing.

#### A. Belmont Has No Personal Right or Privilege in the Subpoenaed Records.

As explained below, Belmont is not a party and therefore cannot object under Rule 72 or Rule 45. *See* Fed. R. Civ. P. 72(a) ("A *party* may serve and file objections to the order" of the magistrate judge (emphasis added)); *id.* R. 45(d)(2)(B) (requiring notice to other parties before service and providing that "[a] person commanded to produce documents or tangible things… may serve … a written objection"). Even if he were a party, his ability to object under Rule 45(d)(2)(B) would be limited. Generally, a party lacks standing to challenge a subpoena directed to a third party unless the party claims a personal right or privilege in the information sought. *See Transcor, Inc. v. Furney Charters, Inc.*, 212 F.R.D. 588, 590 (D. Kan. 2003). The subpoenas here seek the hosting providers' account, subscriber, and log records for a website. *See* Expedited Motion, Exs. B–C, Attach. A. Belmont does not claim that any of those records concern him. He admits that he

does not operate the site, does not know who does, and has never supplied it with information. Belmont Decl. ¶¶ 8, 10.

The interests Belmont describes, including anonymous-speech protections, a reporter's privilege, and Stored Communications Act limits, belong, if at all, to others. He acknowledges that the privilege protections he invokes belong to the reporter and the source. *See* Proposed Objs. at 9, Dkt. No. 8-1. Belmont claims to be neither. And Belmont has not established that the Subpoena Recipients cannot invoke appropriate objections under Rule 45. A litigant ordinarily must assert his own legal rights and "cannot rest his claim to relief on the rights or interests of third parties." *Kowalski v. Tesmer*, 543 U.S. 125, 129–30 (2004) (citation omitted). Belmont does not attempt to satisfy the requirements for third-party standing, such as a close relationship with the rights-holders or a hindrance to their ability to protect their own interests. *See Kowalski*, 543 U.S. at 130. Nor could he, given his sworn statement that he has no relationship with the site or its operators. Belmont Decl. ¶¶ 8, 10.

### B. The Asserted Injury Depends on Speculation About the Choices of Unidentified Third Parties.

Belmont's injury theory is that disclosure of identifying records may cause unidentified sources related to or acting in concert with thebammap.com to stop providing information to the site, which may in turn reduce the information he reads. Mot. to Stay at 4; Mot. to Intervene at 6–9. That theory requires several contingent steps: that the providers hold records identifying sources rather than only account holders; that any persons identified are not themselves the defendants; that those persons stop supplying information; that the site's operators are then unable to continue publishing information; and that Belmont has no other access to the information he values. Each step depends on others' independent and hypothetical choices.

An injury that rests on a speculative chain of possibilities, or on guesswork about how independent actors will exercise their judgment, does not establish standing. *See Lujan*, 504 U.S. at 560 (the alleged harm must be "actual or imminent, not conjectural or hypothetical" to establish standing (citations omitted)). Belmont relies on *Department of Commerce v. New York*, 588 U.S. 752 (2019), for the proposition that standing may rest on the predictable reactions of third parties. Mot. to Intervene at 8–9. But that case rested on an established evidentiary record of likely third-party responses. *Dep't of Com.*, 588 U.S. at 767–68. Here, Belmont's own declaration states that he does not know who operates or supplies the site, indicating that his harm is not actual or imminent. Belmont Decl. ¶ 8.

Belmont's reliance on *Murthy v. Missouri*, 603 U.S. 43 (2024), does not change the analysis. Mot. to Stay at 3. *Murthy* made clear that the so-called "right to listen" under the First Amendment does not provide a boundless theory of standing to any listener claiming a general interest in a particular speaker's content. *See id.* at 75. The First Amendment right to "receive information and ideas" supplies standing "only where the listener has a concrete, specific connection to the speaker." *Id.* Belmont has expressly disclaimed any direct connection with the unknown operator of thebammap.com or the Subpoena Recipients. Belmont Decl. ¶¶ 7, 10. His regular reading of the site does not give him a cognizable stake in third-party discovery or in this dispute.

BAM's claims target parties that owed it confidentiality obligations. *See* Compl. ¶¶ 64–67, 77–78, 90–91. Belmont has not cited any authority recognizing a listener's First Amendment right to receive information that is subject to valid confidentiality obligations or other legal restrictions on disclosure. *Cf. Cohen v. Cowles Media Co.*, 501 U.S. 663, 669–70 (1991) (holding that the First Amendment does not bar enforcement of generally applicable laws against the press); *Doe v.*

*Shurtleff*, No. 1:08-CV-64-TC, 2009 WL 2601458, at *4 (D. Utah Aug. 20, 2009) ("Courts have broadly agreed that the protection afforded to anonymous Internet users must be related to the importance of the type of speech."). If the First Amendment shielded such disclosures, no private party could enforce contractual confidentiality provisions or prevent the disclosure of trade secrets so long as some person expressed an interest in receiving the information. The First Amendment does not provide that type of absolute protection.

**C. Any Interest Belmont Asserts Is Shared with the General Reading Public.**

Belmont's interest is that of any reader of the site. He identifies nothing that distinguishes his position from that of other members of the public who read or may read it. Belmont Decl. ¶¶ 5–7. An interest held in common with the public at large is a generalized grievance that does not support standing. *Cf. Lujan*, 504 U.S. at 573–74 (noting that a party with only a general grievance does not have Article III standing). Accepting his theory would allow any reader of any publication to intervene in civil discovery whenever a party seeks records that may identify a party who breached confidentiality obligations.

**D. Belmont Is Not a Party and Cannot Invoke DUCivR 72-2(c) or Rule 72(a).**

Rule 72(a) permits "a party" to object to a magistrate judge's non-dispositive order. Fed. R. Civ. P. 72(a). DUCivR 72-2(c) likewise addresses stays sought in connection with such objections. Belmont acknowledges that he is not a party and that DUCivR 72-2(c) will apply to him only if intervention is granted. Mot. to Stay at 5. The Motion to Stay is therefore premature, and, as explained above, Belmont is unlikely to succeed on the Motion to Intervene.

Recognizing this, Belmont alternatively asks the Court to enter the same restrictions "on its own initiative." *Id.* at 5–6. The Court's authority to manage discovery and its docket is broad, *see SEC v. Merrill Scott & Assocs., Ltd.*, 600 F.3d 1262, 1271 (10th Cir. 2010), but that authority

does not supply standing to a nonparty or convert his request into party relief. Belmont's alternative request seeks the same order, with the same reporting and service obligations running to him as a nonparty. [Proposed] Interim Order ¶¶ 4–5, 7. If the Court acts on its own initiative, BAM respectfully requests that it not include measures or conditions allowing Belmont's further participation.

## II. THE STAY FACTORS DO NOT FAVOR RELIEF.

A stay is "an exercise of judicial discretion," and the party requesting one bears the burden of showing that the circumstances justify it. *Nken v. Holder*, 556 U.S. 418, 433–34 (2009) (citations omitted). A court considers four factors: (1) likelihood of success on the merits; (2) irreparable injury; (3) injury to the other parties; and (4) the public interest. *Id.* at 434. The first two factors are the most critical. *Id.*

Because the Motion to Stay depends on intervention, Belmont must show a likelihood that intervention will be granted. Mot. to Stay at 3. He has not done so. Intervention as of right requires an interest "relating to the property or transaction that is the subject of the action." Fed. R. Civ. P. 24(a)(2).[3] The transaction at issue here is the alleged disclosure of BAM's confidential information by persons bound by contractual confidentiality obligations and the protection of BAM's trade secrets. Compl. ¶¶ 14–16, 64–67. Belmont has no relationship to that transaction. Belmont Decl. ¶¶ 8, 10. His interest in reading a website that published some of the information is, at most, indirect. And, as explained *supra* Section I, he cannot object under Rule 72 or Rule 45 and has no cognizable speech interest here. Nor has he shown irreparable injury to himself. The harm he

[3] Belmont's Motion to Intervene only seeks intervention as of right under Fed. R. Civ. P. 24(a)(2). Belmont does not seek permissive intervention under Rule 24(b). Thus, the Court need only evaluate his standing and intervention request under Rule 24(a)(2).

describes would fall, if at all, on others, and his own claimed harm depends on the speculative chain discussed in Section I.B. To the extent the subpoenas affect anyone's legal interests, the persons whose records are sought, and the providers that hold them, can protect those interests directly. *See* Fed. R. Civ. P. 45(d)(3).

A stay would, by contrast, delay BAM's ability to identify and serve the persons it alleges are continuing to disclose its confidential information. BAM alleges that nonpublic information continued to reach thebammap.com after BAM's September 8, 2026 notice to Vercel, and that bamopsmanual.com continued publishing additional sections of the Operations Manual after BAM's initial complaints. Compl. ¶¶ 33, 38–42. BAM also alleges that internet service providers do not retain subscriber and activity logs indefinitely. Expedited Motion at 3–4. And the proposed order would impose affirmative filing, notice, and service obligations on BAM that run to a nonparty. [Proposed] Interim Order ¶¶ 4–5, 7. Belmont has not shown that his claimed injury, even if cognizable, outweighs the harm to BAM from delaying discovery.

The public interest supports the enforcement of contractual confidentiality obligations and trade-secret protections, as Belmont acknowledges. Mot. to Stay at 5. That interest is served by allowing BAM to identify the persons it alleges breached those obligations, subject to the protections already available to subpoena recipients and affected persons under Rule 45.

## III. THE PERSONS WITH ACTUAL INTERESTS IN THE RECORDS HAVE ADEQUATE REMEDIES.

Denying the Motion to Stay does not leave any affected person without recourse. A subpoena recipient may object or move to quash or modify, and the court for the district where compliance is required must quash or modify a subpoena that requires disclosure of privileged or other protected matter. Fed. R. Civ. P. 45(d)(2)(B), (d)(3)(A)(iii). A person who claims a privilege

in produced information may invoke the procedures of Rule 45(e)(2)(B). Hosting providers are also subject to the limits of the Stored Communications Act. *See* 18 U.S.C. § 2702. These mechanisms do not depend on a website reader intervening on others' behalf. Belmont, who claims no connection to the site or its operator, does not explain why the operator cannot seek relief on its own behalf.

## IV. THE COURT CAN AND SHOULD DENY THE MOTION TO INTERVENE.

As noted *supra* note 1, this Memorandum responds to the Motion to Stay pursuant to the Court's Docket Order. Because the issues are interconnected, BAM has addressed certain arguments raised in the Motion to Intervene. While BAM intends to respond more fully to the Motion to Intervene within the time prescribed by the rules or upon order of the Court, the arguments raised herein provide sufficient basis to deny intervention without further response.

## CONCLUSION

For these reasons, BAM respectfully requests that the Court deny the Motion to Stay and, if the Court deems appropriate, the Motion to Intervene.

DATED: October 7, 2026

**DENTONS DURHAM JONES PINEGAR P.C.**

*/s/ Matthew J. Orme*
Matthew J. Orme
Kyle K. Tucker

*Attorneys for Plaintiff BAM Franchising, Inc.*

## **WORD COUNT CERTIFICATION**

The undersigned certifies pursuant to DUCivR 7-1(a)(4)(D) that the foregoing Memorandum is 3,076 words long, according to the word processing program used to draft the Memorandum, excluding those items set forth in DUCivR 7-1(a)(6). This is within the 3,100-word limit for a response to a standard motion under DUCivR 7-1(a)(4)(D).

/s/ *Matthew J. Orme*

**CERTIFICATE OF SERVICE**

I hereby certify that on October 7, 2026, a true and correct copy of the foregoing was served via the Court's electronic filing system to all parties and counsel of record. Additionally, a true and correct copy of the foregoing was served via email to Proposed Intervenor Gregory Belmont at the email address listed in his filings in this matter.

By: /s/ *Kristin Hughes*