FILED
2026 OCT 8
CLERK
U.S. DISTRICT COURT

GREGORY C. BELMONT
℅ CereBel Legal Intelligence
157 East 86th Street, 4th Floor
New York, NY 10028
Telephone (631) 506-8464
belmont@cerebel.law

**IN THE UNITED STATES DISTRICT COURT**

**DISTRICT OF UTAH - CENTRAL DIVISION**

| | |
|---|---|
| BAM FRANCHISING, INC., a Delaware corporation,<br><br>Plaintiff,<br><br>vs.<br><br>DOES 1–10,<br><br>Defendants. | **REPLY IN SUPPORT OF EXPEDITED MOTION TO STAY THE DISCOVERY ORDER IN PART PENDING RESOLUTION OF LIMITED INTERVENTION AND RULE 72(A) OBJECTIONS**<br><br>Case No. 2:26-cv-00895-DBB-DBP<br><br>District Judge David Barlow<br>Magistrate Judge Dustin B. Pead |

Proposed Intervenor Gregory C. Belmont ("Movant") replies in support of his Expedited Motion to Stay the Discovery Order (ECF 6) in Part (ECF 9). BAM's opposition (ECF 11, "Opp.") argues that Movant lacks standing, that he is not a party, and that others have remedies under Rule 45. It does not answer several specific objections to ECF 6. And it acknowledges the Court's broad authority over discovery, asking that, if the Court acts on its own initiative, its order omit terms allowing Movant's further participation. Opp. at 8–9. Movant accepts that condition in the alternative. Exhibit A is an alternative interim order with the same custody safeguards and without the terms that run to him. He still prefers ECF 9-1, for the reasons in Section F, but either order would let the District Judge rule before any identity is read. BAM also

argues against intervention and asks the Court to deny it on this briefing, Opp. at 11; Section E responds.

**A. BAM acknowledges the Court's authority, and its objection to the order's terms can be met.** BAM argues Movant may not invoke DUCivR 72-2(c) before intervention. Opp. at 8. The rule will apply by its terms once Movant is a party, so he also asked the Court to act under its authority over its own discovery order. ECF 9 § II.E. BAM acknowledges that the Court's power to manage discovery and its docket is broad, Opp. at 8 (citing *SEC v. Merrill Scott & Assocs., Ltd.*, 600 F.3d 1262, 1271 (10th Cir. 2010)), and conditionally objects to provisions it says run to Movant, *id.* at 8–9. ECF 6 is a Rule 26(d)(1) order authorizing discovery before the Rule 26(f) conference, ECF 6 at 1 & n.3, 2, and the Court has inherent authority to stay proceedings, *Landis v. N. Am. Co.*, 299 U.S. 248, 254 (1936). The alternative order keeps the safeguard that matters, records held unopened while the Court decides, and drops every term that runs to Movant. It keeps one term BAM lists, Opp. at 9 (citing ECF 9-1 ¶ 4), because it runs to the subpoena recipients, not to Movant; without it, the hold cannot reach records still in their hands.

BAM says the Court's authority "does not supply standing to a nonparty," Opp. at 8–9, but an order the Court enters on its own initiative does not depend on Movant's standing, and BAM does not argue otherwise. Nor does accepting BAM's condition narrow the motion to intervene, whose primary purpose is District Judge review of ECF 6. *See* Section E.

**B. Movant's injury is his own, concrete, irreparable, and traceable to an order already entered.** BAM says Movant asserts the rights of others. Opp. at 5–6 (citing *Kowalski v. Tesmer*, 543 U.S. 125, 129–30 (2004)). He does not. He asserts his own right to receive

information, which the First Amendment protects "to its source and to its recipients both." *Va. State Bd. of Pharmacy v. Va. Citizens Consumer Council, Inc.*, 425 U.S. 748, 756 (1976). The consumers there asserted their own rights, not the pharmacists'; so does Movant. He does not assert the reporter's privilege or the operators' anonymity; both proposed orders preserve their opportunity to assert those protections themselves.

Nor does *Murthy* require the "direct connection" BAM demands. Opp. at 7. It requires "a concrete, specific connection to the speaker." *Murthy v. Missouri*, 603 U.S. 43, 75 (2024). The Court drew that requirement from *Kleindienst v. Mandel*, 408 U.S. 753, 762–63 (1972), in which listeners sought particular speech from a particular speaker. *Murthy*, 603 U.S. at 75. The Court rejected a theory letting any social-media user sue over moderation of anyone else's content, because the plaintiffs could tie no specific instance of moderation to an identifiable harm. *Id*. at 74–75. Movant regularly reads one identified publication and knows no other source that publishes the primary-source material as frequently or uses the same credibility rubric. ECF 8-2 ("Decl.") ¶¶ 5–7. The consumers in *Virginia Pharmacy* asserted their own interest as consumers, and the Court observed that such an interest "may be as keen, if not keener by far," than interest in political debate. 425 U.S. at 763. Movant's interest is of the same kind and more. He follows BAM's commercial practices as a consumer and LEGO, toy, and game hobbyist, and he comments on legal issues, including police conduct. Decl. ¶ 3; No. 2:26-cv-00593, ECF 10, Ex. A ¶ 2. And Decl. ¶ 7, which BAM cites as a disclaimer, states that he intends to keep reading.

That other readers share his injury does not make it a generalized grievance. Opp. at 8. A concrete harm does not become abstract because it is widely shared. *FEC v. Akins*, 524 U.S. 11,

24 (1998). *Lujan v. Defenders of Wildlife*, 504 U.S. 555, 573–74 (1992), rejected standing resting only on every citizen's interest in the law's proper application. Movant asserts something different: the loss of particular reporting he reads. And the breadth of the affected audience is a reason to weigh the First Amendment interests, not ignore them. An order obtained ex parte, whose effects reach a publication's entire readership, is where the balancing required before compelled disclosure matters most. *See Grandbouche v. Clancy*, 825 F.2d 1463, 1466–67 (10th Cir. 1987).

BAM's chain of contingencies, Opp. at 6, treats the sources as the only path to harm. It omits the subpoenas' direct target: the people who report and publish on the site, whose unmasking threatens the reporting whether or not any source is deterred. The subpoenas seek the identities of everyone who "operated, managed, administered, maintained, edited, authored content for, or otherwise controlled" the site, ECF 3, Exs. B–C, Attach. A, Def. 7, and BAM pleads records "may identify the operator" as well as persons who supplied it, Compl. ¶ 56. The First Amendment protects an author's decision to publish anonymously. *McIntyre v. Ohio Elections Comm'n*, 514 U.S. 334, 341-42 (1995) (author's decision to remain anonymous, which "may be motivated by fear of economic or official retaliation," is "an aspect of the freedom of speech protected by the First Amendment"); *Talley v. California*, 362 U.S. 60, 64–65 (1960) (critics of "oppressive practices" have often been able to speak "either anonymously or not at all"). The site's operators chose anonymity: they publish without identifying themselves, and when BAM demanded the identities of those who "provided or published" the materials, the site declined. Decl. ¶ 5. BAM describes the operators as third-party recipients of the Does' disclosures. Compl. ¶ 67. Unmasking them to BAM is likely to chill the publication, and with it the reporting Movant reads. The last time BAM obtained an ex parte order against a critic, it sent

a takedown demand to his platform the next day, and he withheld his finished episode. No. 00593, ECF 10, Statement of Relevant Facts ¶¶ 4, 6; Decl. ¶ 4.

In *Clapper*, the alleged injury depended in part on whether the Government would target the plaintiffs' foreign contacts and whether the Foreign Intelligence Surveillance Court would approve the Government's procedures. *Clapper v. Amnesty Int'l USA*, 568 U.S. 398, 410–14 (2013). Neither contingency exists here: the Court has already authorized discovery directed at the publication Movant reads. ECF 6 at 2; ECF 3, Exs. B–C, Attach. A, Def. 1. BAM's allegations that the sources relied on the site's anonymity, and that the records sought may identify them, make the reaction to identification predictable. Compl. ¶¶ 27, 36–37, 55–56; *see Dep't of Commerce v. New York*, 588 U.S. 752, 767–68 (2019). BAM notes that *Department of Commerce* rested on evidence of likely third-party responses. Opp. at 7. Here, those allegations, with Movant's sworn account of the source-based reporting he reads, support the same kind of inference. Decl. ¶¶ 5–7.

BAM's point that Movant does not know who operates the site, *Opp. at 7*, shows only that the site is anonymous. Nor must the site go dark: diminished reporting is injury enough, and alternative access does not necessarily extinguish the interest. *See Mandel*, 408 U.S. at 765. And BAM does not contest redressability: records held unopened cannot expose anyone through those records. BAM also says Movant has not shown irreparable injury to himself because the harm "would fall, if at all, on others." Opp. at 9–10. The injury is his own, for the reasons above, and it cannot be undone: once counsel reads an identity, no later ruling can restore the anonymity on which the reporting depends. "The loss of First Amendment freedoms, for even minimal periods of time, unquestionably constitutes irreparable injury." *Elrod v. Burns*, 427 U.S. 347, 373 (1976).

**C. BAM's First Amendment arguments attack a position Movant does not take.**

Movant does not claim that the First Amendment bars enforcement of confidentiality agreements. Opp. at 7–8. Movant asks only that identifying records be held unopened until the District Judge decides whether, and on what terms, they may be read. *Cohen v. Cowles Media Co.*, 501 U.S. 663, 669–70 (1991), permits enforcement of generally applicable law against the press; it does not decide the timing or scope of discovery that identifies anonymous publishers and sources. BAM's own authority ties protection for anonymous speakers to "the importance of the type of speech," Opp. at 8 (quoting *Doe v. Shurtleff*, No. 1:08-CV-64-TC, 2009 WL 2601458, at *4 (D. Utah Aug. 20, 2009)), which presupposes the balancing ECF 6 did not undertake, *Grandbouche*, 825 F.2d at 1466–67.

That BAM calls this case "fundamentally a commercial dispute," Opp. at 2, does not make the reporting it targets commercial speech. BAM describes the leaked materials as its "internal crisis-response materials and franchisee talking points" and a "crisis-PR and story-angles plan," Compl. ¶¶ 11(d), 23, concerning its response to public controversies over customer and franchise disputes, police conduct, criminal prosecution of content creators, and litigation that national and regional outlets have covered; this proceeding drew independent commentary within a week of filing.[1]

[1] *See, e.g.*, *How a Star Wars Lego Dispute Triggered an Armed Police Raid in Utah*, Wall Street Journal (June 10, 2026) (police conduct); *'Reckless Ben' Can Keep Posting About Utah's Bricks & Minifigs, But He Faces New Restrictions*, Salt Lake Trib. (July 10, 2026) (consignment dispute and litigation); *Provo Charges Dismissed Against 'Reckless Ben' in Dispute over Lego Collection*, ABC4 Utah (Sept. 16, 2026) (prosecution of creator); *Reckless Ben Opens Rival LEGO Store in Former Bricks & Minifigs Location Amid Lawsuit*, Dexerto (Sept. 13, 2026) (citing reporting by thebammap.com); *Bricks & Minifigs Really Doesn't Want You To Know About The BAM Map, Sues To Unmask Whoever Runs It*, Techdirt (Oct. 2, 2026) (this proceeding). Movant requests that the Court take judicial notice of these publications solely for the fact of their publication and the public attention they reflect, not for the truth of their contents. *See Estate of Lockett ex rel. Lockett v. Fallin*, 841 F.3d 1098, 1111 (10th Cir. 2016); *In*

**D. A hold costs BAM little.** BAM says a stay would delay identifying persons who continue to disclose its information. Opp. at 10 (citing Compl. ¶¶ 33, 38–42). The hold delays only counsel's review of one category of records, and only while the Court decides; service and production proceed. BAM may keep pursuing the suspect its own investigation identified, Compl. ¶ 45, and any discovery outside that category, and the Court may modify the hold at any time on a showing about particular records. Ex. A ¶ 6. Preservation requests address the risk of loss: BAM asked Vercel to preserve these records on September 8, Compl. ¶¶ 29, 34, and both proposed orders require preservation requests to every recipient. BAM still identifies no retention period that a short hold would outrun. Opp. at 10; ECF 3 at 4. Rule 4(m) gives BAM until December 24, 2026, to serve. BAM pleads that injunctive relief "is required," Compl. ¶ 84, but has not sought it. And the alternative order eliminates every obligation that runs to Movant. Weighed against an injury that cannot be undone, a short delay in reviewing one category of records is modest. The same structure serves the public interest BAM invokes, Opp. at 10: collection and preservation continue, and the Court keeps the ability to review disclosure of anonymous publishers and sources before it occurs.

**E. Movant is likely to succeed.** BAM contests only Movant's likelihood of intervention. Opp. at 9. Because BAM argues against intervention here and asks the Court to deny it on this briefing, *id.* at 11, Movant answers those arguments in this reply; if BAM files the fuller response it reserves, *id.* at 2 n.1, Movant will reply within the time the rules allow. BAM defines the transaction as the disclosure of its information by persons bound by confidentiality obligations. *Id.* at 9. But the complaint pleads that those disclosures went "to unauthorized third

---

*re Church of Jesus Christ of Latter-day Saints Tithing Litig.*, 785 F. Supp. 3d 1009, 1026 n.127 (D. Utah 2025), *aff'd*, No. 25-4068, slip op. at 13 (10th Cir. Aug. 31, 2026).

parties, including the operators of thebammap.com," Compl. ¶ 67, and ECF 6 authorizes subpoenas to trace them through that publication's records, ECF 6 at 2; Compl. ¶ 56. Limited intervention to address an order governing discovery is well established. *United Nuclear Corp. v. Cranford Ins. Co.*, 905 F.2d 1424, 1427 (10th Cir. 1990) (affirming permissive intervention under Rule 24(b) by nonparties seeking to modify a protective order). The interest inquiry is practical; the Tenth Circuit has abandoned the "direct, substantial, and legally protectable" formulation. *Kane Cnty. v. United States*, 928 F.3d 877, 891 & n.20 (10th Cir. 2019). Movant's interest is his own First Amendment right to receive reporting he follows, Decl. ¶¶ 5–7, and the burden to show possible impairment is minimal, *Kane Cnty.*, 928 F.3d at 891.

Movant's primary purpose is narrow: to present the objections lodged with his motion, ECF 8-1 ("Obj."), so the District Judge can review ECF 6 before identifying records are examined. ECF 8 at 1–2. Rule 72(a) provides for objections by a party, and intervention would permit Movant to invoke that procedure. No defendant has appeared, and BAM seeks disclosure, so no existing party represents Movant's interest in continued access to the reporting. Confined to the challenged discovery order, his participation would not unduly delay or prejudice adjudication of the original parties' rights. *See* Fed. R. Civ. P. 24(b)(3).

BAM asserts that Movant "does not seek permissive intervention under Rule 24(b)." Opp. at 9 n.3. The motion's first sentence moves under Rule 24(a)(2) "or alternatively Rule 24(b)(1)(B)," and Part II.C is captioned "Alternatively, the Court should permit intervention." ECF 8 at 1, 9-10. Having overlooked the request, BAM does not address it or the motion's reliance on *United Nuclear*, which approved that vehicle for this purpose. 905 F.2d at 1427. And the Tenth Circuit "has historically taken a 'liberal' approach to intervention and thus favors the

granting of motions to intervene." *W. Energy All. v. Zinke*, 877 F.3d 1157, 1164 (10th Cir. 2017).

BAM does not answer several specific objections to ECF 6, including that its no-other-means finding cites BAM's identification of a suspect, ECF 6 at 2 & n.7 (citing Compl. ¶ 45), and that it does not require notice to affected account holders or sources or provide a specific opportunity for them to seek protection before production. Obj. § IV.A–D. Interim custody safeguards would preserve the effectiveness of review before identifying records are examined.

**F. Rule 45 remedies depend on notice ECF 6 does not provide.** BAM says the persons with interests in the records can protect themselves under Rule 45. Opp. at 10–11. Effective protection against initial disclosure requires an opportunity to seek relief before identifying records are examined. ECF 6 requires no such notice.

Rule 45's notice runs to parties, as BAM acknowledges, Opp. at 5; *see* Fed. R. Civ. P. 45(a)(4), and with no defendant appearing it reaches no one. Rule 45(e)(2)(B) operates only after production, reaches only privilege and trial-preparation claims, and cannot make counsel unlearn an identity. Requiring anonymous speakers to come forward to protect their anonymity risks "nullification of the right at the very moment of its assertion." *NAACP v. Alabama ex rel. Patterson*, 357 U.S. 449, 459 (1958). BAM has reached the operators through their host before, Compl. ¶¶ 29–30, 34, and does not explain why notice is impossible. The order also reaches beyond thebammap.com. The complaint lists "the operators of . . . bamopsmanual.com, YouTube content creators, and others" among the recipients it has in view, Compl. ¶ 67, which is why Movant's objections retain value even if thebammap.com's operators appear, *see* Obj. § IV.B. ECF 6 authorizes subpoenas to "third-parties, including" Vercel and GoDaddy, for "any other

information" that might identify the defendants, ECF 6 at 2, and the subpoenas ask each provider to identify every other provider the site uses, ECF 3, Exs. B–C, Attach. A, Req. 8. Because the recipients are open-ended, a report of service would allow the Court to confirm whether the custody terms have reached each recipient.

**G. The prior proceeding does not support BAM's bystander characterization.** BAM says that in the *Schneider* case Movant claimed no "cognizable interest beyond that of an interested bystander," citing his declaration there. Opp. at 4 n.2. The declaration BAM cites says otherwise. Movant declared that he was a paid subscriber to the restrained reporting; "a consumer and hobbyist reseller of LEGO, toys, and games with an interest in the commercial practices underlying this retail controversy"; and a commentator on legal issues, including police conduct. No. 00593, ECF 10, Ex. A ¶ 2. He withdrew that motion once a preliminary injunction replaced the speech restrictions that prompted it. No. 00593, ECF 24. Nor does the law treat a listener as a bystander. Even *Murthy*, on which BAM relies, recognizes a "First Amendment right to 'receive information and ideas.'" 603 U.S. at 75 (quoting *Mandel*, 408 U.S. at 762). In *Virginia Pharmacy* and *Mandel*, listeners were the plaintiffs, and the Court decided their First Amendment claims as their own. 425 U.S. at 756–57; 408 U.S. at 762–65.

**CONCLUSION.** Movant respectfully requests that the Court enter the proposed interim order (ECF 9-1) or, alternatively, the order in Exhibit A, effective on entry.

DATED this 8th day of October, 2026.

Respectfully submitted,

/s/ Gregory C. Belmont
Gregory C. Belmont
Proposed Intervenor, Pro Se

**CERTIFICATE OF COMPLIANCE**

I, Gregory C. Belmont, certify that this Reply does not exceed ten pages or 3,100 words and complies with DUCivR 7-1(a)(4).

/s/ Gregory C. Belmont
Gregory C. Belmont

**INDEX OF EXHIBITS**

Movant respectfully submits the following index of exhibits accompanying his Reply:

| Exhibit | Description | Source Record Reference |
|---|---|---|
| **Exhibit A** | [Alternative Proposed] Interim Order Staying The Discovery Order (ECF 6) In Part | Filed Herewith |

**CERTIFICATE OF SERVICE**

I certify that on October 8, 2026, a true and correct copy of the following documents:

1. Reply in Support of Expedited Motion to Stay The Discovery Order In Part Pending Resolution Of Limited Intervention and Rule 72(a) Objections,
2. Exhibit A: [Alternative Proposed] Interim Order Staying The Discovery Order (ECF 6) In Part

were emailed to the Clerk's Office at utdecf_clerk@utd.uscourts.gov for filing. Upon docketing, the Court's CM/ECF system is expected to send a notice of electronic filing to counsel of record for Plaintiff, Matthew J. Orme and Kyle K. Tucker of Dentons Durham Jones Pinegar P.C. I also emailed a copy to matt.orme@dentons.com and kyle.tucker@dentons.com as a single pdf.

/s/ Gregory C. Belmont
Gregory C. Belmont