Leonard J. French (admitted pro hac vice, ECF 16)
Pennsylvania Bar No. 312413
THE LAW FIRM OF LEONARD J. FRENCH
74 West Broad Street, Suite 400
Bethlehem, PA 18018
Telephone: (610) 466-5644
Email: ljfrench@leonardjfrench.com

Eric Allen (Utah State Bar No. 13486)
ALLEN, MITCHELL & ALLEN PLLC
2091 Murray Holladay Road, Suite 21
Salt Lake City, UT 84117
Telephone: (801) 930-1117
Email: eric@allenlawyer.com

Attorneys for Anonymous Non-Party Publisher of thebammap.com
**LIMITED APPEARANCE**

**IN THE UNITED STATES DISTRICT COURT**
**DISTRICT OF UTAH, CENTRAL DIVISION**

| | |
|---|---|
| BAM FRANCHISING, INC., a Delaware corporation,<br><br>Plaintiff,<br><br>vs.<br><br>DOES 1-10,<br><br>Defendants. | **ANONYMOUS NON-PARTY PUBLISHER'S EMERGENCY MOTION TO VACATE OR MODIFY ORDER GRANTING EXPEDITED DISCOVERY (ECF 6), TO QUASH OR MODIFY SUBPOENAS, AND FOR PROTECTIVE ORDER**<br><br>**EXPEDITED CONSIDERATION REQUESTED**<br><br>**LIMITED APPEARANCE**<br><br>Case No. 2:26-cv-00895-DBB-DBP<br><br>District Judge David Barlow<br><br>Magistrate Judge Dustin B. Pead |

**RELIEF REQUESTED AND GROUNDS**

The anonymous non-party publisher of the website thebammap.com, referred to in local counsel's pro hac vice motion as the "John Doe operator of thebammap.com and bamopsmanual.com" (ECF 13) (the "Publisher"), appears for the limited purpose of this motion, without submitting to the Court's jurisdiction for any other purpose and reserving all defenses, including personal jurisdiction and service. Under Fed. R. Civ. P. 26(c) and 45(d)(3), and the Court's authority to revise its interlocutory orders, the Publisher moves for an order:

(1) vacating the Order Granting Ex Parte Motion for Expedited Discovery (ECF 6, the “Ex Parte Order”) to the extent it authorizes discovery of the identity of, or information about, the operator of thebammap.com;

(2) quashing the subpoenas issued under the Ex Parte Order to Vercel, Inc. and GoDaddy.com, LLC to the same extent;

(3) protecting the Publisher from any further third-party subpoena seeking information that identifies the operator of thebammap.com or the website's sources, absent further order on noticed motion; or

(4) alternatively, modifying the Ex Parte Order and the subpoenas as set out in Part V.

The grounds are these. The Ex Parte Order authorizes discovery to identify the *defendants* so that BAM may serve them. BAM's Complaint pleads that the defendants are franchisees and other insiders bound by confidentiality agreements, and it identifies the website operator as a third party that received information, not as a defendant. BAM also pleads that it already has evidence, in its own systems, identifying a suspected source. Unmasking an

anonymous publisher on a matter of public concern, and through the publisher its sources, requires First Amendment balancing that BAM's ex parte motion never presented. And the subpoenas reach beyond identity to the contents of stored communications, which the Stored Communications Act bars.

## BACKGROUND

**The dispute and the website.** BAM franchises Bricks & Minifigs retail stores. Since spring 2026, BAM's dispute over a LEGO collection consigned to a BAM franchisee, and its litigation against a YouTube creator who covered it, Benjamin Schneider, have drawn national attention. *See BAM Franchising, Inc. v. Schneider*, No. 2:26-cv-00593-DBB-CMR (D. Utah); Declaration of Leonard J. French ("French Decl.") ¶ 7, Ex. E (press coverage). Thebammap.com is an anonymous, non-commercial website that publishes reporting and analysis about that dispute and BAM's franchise system. It cites its sources, grades its claims, publishes public corrections, and offers a right-of-reply form. French Decl. ¶ 6, Ex. D.

**The Complaint.** BAM sued "Does 1-10" for breach of contract and misappropriation under the Utah Uniform Trade Secrets Act and the Defend Trade Secrets Act. ECF 1. It pleads that the defendants are "current or former franchisees, employees, or other persons who obtained access to Plaintiff's Confidential Information pursuant to contractual obligations," *id.* ¶ 14, who disclosed that information "to unauthorized third parties, including the operators of thebammap.com and bamopsmanual.com," *id.* ¶ 67. BAM further pleads that it "has identified at least one current or former franchisee as a suspected source of the leaked Confidential Information based on internal investigation, including review of Google Drive audit logs and system access records." *Id.* ¶ 45; *see id.* ¶ 53.

**The Ex Parte Motion and Ex Parte Order.** Three days after filing, BAM moved ex parte for leave to subpoena third-party websites, "including without limitation" Vercel and GoDaddy. ECF 3 at 4. The motion did not mention the First Amendment, the reporter's privilege, or the Stored Communications Act. BAM's proposed order sought records "containing the identity and contact information for the unidentifiable Doe Defendants." *Id.*, Ex. A ¶ 2. The attached subpoenas, dated September 28, 2026, go further. They demand eight categories of documents, including all IP and access logs, all documents relating to the upload or publication of material, all communications between the host and the website operator, and all records of the website's creation, deployment, and configuration. *Id.*, Exs. B–C (Ex. A, Requests 1–8). They define "Website Operator" to include anyone who "authored content for" the site. *Id.*

On September 30, 2026, the Court granted the motion. The Ex Parte Order authorized subpoenas to "third-parties, including Vercel, Inc. and Go.Daddy.com [sic], to obtain subscriber information, account records, IP address logs, deployment records and any other information that might allow BAM to identify and properly serve an amended complaint that contains the defendants' true identities and capacities." ECF 6 at 2. The Ex Parte Order found that BAM had "exhausted its internal investigation methods," citing the allegations in paragraph 45 of the Complaint. *Id.* at 2 & n.7. It did not provide for notice to account holders before production.

**Service.** BAM served both subpoenas on the providers' registered agents on October 5, 2026. ECF 14, 15. The served subpoenas are dated October 1, 2026, and command production by October 19, 2026, at 5:00 p.m. ECF 14 at 3; ECF 15 at 3. Their attachments are the requests BAM drafted before the Order, unchanged: they bear the same document numbers as Exhibits B and C to the ex parte motion. *Compare* ECF 3 at 13–15, 20–22, *with* ECF 14 at 6–8, *and* ECF 15

at 6–8. BAM's counsel has confirmed that these are the only subpoenas BAM has served. French Decl. ¶ 5.

**Conferral.** Counsel for the Publisher wrote to BAM's counsel on October 7, 2026, and conferred by telephone on October 12, 2026. French Decl. ¶¶ 2–3, Ex. A. BAM's counsel stated that BAM's principal concern is whether the Publisher is a BAM franchisee or is otherwise the source of the materials. *Id.* ¶ 3. The Publisher is not, and has never been, a BAM franchisee or employee, and has never been a party to any agreement with BAM. Decl. of the Publisher ¶¶ 3–4, ECF [No.] (redacted; unredacted version lodged under seal). On October 13, counsel set out the Publisher's objections in writing and proposed a standstill, a sworn sealed declaration, and a neutral procedure by which the providers would report only whether the account holder appears on a list of persons bound by BAM's agreements. *Id.* ¶ 3, Ex. B. No response was received by the October 14 noon deadline. *Id.* The same day, the undersigned counsel sent that letter to Vercel and GoDaddy. *Id.* ¶ 4, Ex. C. Outside counsel for Vercel responded with a question about whether Plaintiff's counsel had responded. *Id.*

## ARGUMENT

### I. The Court Should Revisit the Ex Parte Order Now That an Affected Person Has Appeared.

The Ex Parte Order was entered two days after BAM moved, on BAM's unsworn presentation alone, before the Publisher had notice and an opportunity to be heard.[1] Discovery orders are interlocutory, and the Court may revise them at any time before final judgment. *Been v. O.K. Indus., Inc.*, 495 F.3d 1217, 1225 (10th Cir. 2007); Fed. R. Civ. P. 54(b). A non-party

[1] BAM could have notified the Publisher of its motion through a submission to its website.

like the Publisher has standing to challenge a subpoena directed to someone else when it asserts a personal right or privilege in the information sought. *Transcor, Inc. v. Furney Charters, Inc.*, 212 F.R.D. 588, 590 (D. Kan. 2003); *Crispin v. Christian Audigier, Inc.*, 717 F. Supp. 2d 965, 973–74 (C.D. Cal. 2010). The Publisher asserts exactly such interests: its own First Amendment right to speak anonymously, the qualified journalist's privilege protecting its sources, and the stored contents of its own accounts.

## II. BAM Has Not Shown Good Cause for Discovery Aimed at the Website Operator.

A party seeking discovery before the Rule 26(f) conference must show good cause. *Qwest Commc'ns Int'l, Inc. v. WorldQuest Networks, Inc.*, 213 F.R.D. 418, 419 (D. Colo. 2003). Courts find good cause to identify Doe *defendants* so that the plaintiff can serve them. ECF 6 at 2. Every case BAM cited, and the case on which the Ex Parte Order relied, involved a Doe accused of the wrongdoing itself. *E.g.*, *Volkswagen Grp. of Am. v. Doe*, 2022 U.S. Dist. LEXIS 124268, 2022 WL 2702646, at *1 (D. Utah July 12, 2022) (defendant allegedly operated an impersonating website). That premise does not hold here, where the subpoenas do not seek the identity of a defendant but of a non-party website publisher instead.

### A. The operator is not a defendant.

BAM pleads its defendants as insiders who owed it contractual duties of confidentiality, Compl. ¶¶ 14, 64–67, whereas it pleads the website operators as the "third parties" to whom those defendants disclosed, *id.* ¶ 67. The subject of the discovery shifts from one filing to the next:

| **Filing** | **Whom the discovery is to identify** |
|---|---|
| Complaint (ECF 1) | Defendants are "current or former franchisees, employees, or other persons" bound by contract (¶ 14); the website operators are "unauthorized third parties" (¶ 67), distinct from "the individuals who provided" material to them (¶ 56). |
| Motion (ECF 3) | "[T]he identity and contact information of Defendants" (at 2); subpoenas "to identify the Doe Defendant(s)" (at 4). |
| Order (ECF 6) | "[T]he defendants' true identities and capacities" (at 2). |
| Subpoenas as served (ECF 14, 15) | Every request targets the "Website Operator," defined as anyone who "registered, created, owned, operated, managed, administered, maintained, edited, authored content for, or otherwise controlled" the site. No request mentions a defendant. |

Identifying the operator does not "identify and properly serve" any defendant. ECF 6 at 2. BAM's counsel has confirmed that BAM's concern is whether the Publisher is a franchisee or the source. French Decl. ¶ 3. The Publisher has never been a BAM franchisee or employee, has never been a party to any agreement with BAM, and has never been issued nor used a BAM account or login. Decl. of the Publisher ¶¶ 3–4. The subpoenas seek discovery about a non-party, and heightened scrutiny applies when a litigant seeks to unmask an anonymous non-party speaker. *Doe v. 2TheMart.com Inc.*, 140 F. Supp. 2d 1088, 1095 (W.D. Wash. 2001); *see Koch Indus., Inc. v. Does*, No. 2:10CV1275DAK, 2011 WL 1775765, at *10 (D. Utah May 9, 2011).

Under that standard, the party seeking disclosure must show that (1) the subpoena was issued in good faith and not for an improper purpose; (2) the information relates to a core claim or defense; (3) the identifying information is directly and materially relevant to that claim or defense; and (4) the information is unavailable from any other source. *Doe*, 140 F. Supp. 2d at 1095. BAM made *none* of those showings.

**B. BAM pleads an alternative source in its own systems.**

The Ex Parte Order found exhaustion based on the allegation in paragraph 45 of BAM's unverified complaint. ECF 6 at 2 n.7. Respectfully, paragraph 45 says the opposite: BAM has already "identified at least one current or former franchisee as a suspected source" from "Google Drive audit logs and system access records." Compl. ¶ 45; *see id.* ¶ 53. BAM controls those systems and their logs. *See id.* ¶¶ 58–59. Records in BAM's own possession are the most direct evidence of who downloaded and shared its files. When a litigant has not exhausted other sources, discovery directed at a publisher is improper. *Silkwood v. Kerr-McGee Corp.*, 563 F.2d 433, 438 (10th Cir. 1977). This Court has limited early Doe discovery to names and contact information, and has denied a subpoena to a provider whose connection to the alleged conduct was not pleaded. *Ion Solar, LLC v. Bailey*, No. 2:23-cv-00371-DBB-DAO, ECF 13 (D. Utah Aug. 11, 2023) (a recent UTD decision where an ex parte, expedited subpoena was partly granted, partly denied, due to lack of plead connection between Google and defendants).

## III. The First Amendment and the Reporter's Privilege Require Balancing Before Disclosure.

Anonymous speech is protected by the First Amendment. *McIntyre v. Ohio Elections Comm'n*, 514 U.S. 334, 342 (1995); *Talley v. California*, 362 U.S. 60, 64–65 (1960). That protection extends to speech on the internet. *Doe v. Shurtleff*, 628 F.3d 1217, 1222 (10th Cir. 2010). Courts weighing whether to unmask an anonymous online speaker require, at a minimum, notice to the speaker, an evidentiary showing on the merits, and a balancing of the competing interests. *Dendrite Int'l, Inc. v. Doe No. 3*, 775 A.2d 756, 760–61 (N.J. Super. Ct. App. Div. 2001); *Highfields Cap. Mgmt., L.P. v. Doe*, 385 F. Supp. 2d 969, 975–76 (N.D. Cal. 2005); *see In re Anonymous Online Speakers*, 661 F.3d 1168, 1175–77 (9th Cir. 2011).

The Tenth Circuit requires that balancing to be undertaken before compelled disclosure. It recognizes a qualified privilege, in civil cases, for those who gather information for publication, including non-traditional journalists. *Silkwood*, 563 F.2d at 436–37 (documentary filmmaker). Before compelling disclosure, a court must weigh (1) whether the party seeking the information has independently tried to obtain it elsewhere and failed; (2) whether it goes to the heart of the matter; (3) whether it is of certain relevance; and (4) the type of controversy. *Id.* at 438. *See also Grandbouche v. Clancy*, 825 F.2d 1463, 1466–67 (10th Cir. 1987) (applying the same balancing to First Amendment associational privilege). This Court has quashed subpoenas aimed at discovering who provided confidential information to the press where the party had not exhausted other sources. *Bottomly v. Leucadia Nat'l Corp.*, No. 94-C-590 B, 1996 WL 560188, at *2 (D. Utah July 2, 1996) ("Therefore, the likelihood of admissible evidence being obtained from the depositions of the reporters is remote and at best problematical.").

Every factor favors the Publisher. BAM has not exhausted the logs it already holds. The operator's identity is not the heart of any claim pleaded against a defendant. The website reports on a matter of public concern: a franchisor's treatment of customers and franchisees, which has drawn national coverage and pending litigation in this Court. And the subpoenas' real reach is to the website's *sources*. Requests 3, 4, 5 and 7 seek access logs, upload records, communications with the host, and deployment data, which are the records that would reveal who provided material to the publisher. ECF 3, Exs. B–C. That is precisely what *Silkwood* protects.

## IV. The Subpoenas Exceed the Order and Seek Contents the Stored Communications Act Bars.

The Stored Communications Act prohibits providers of electronic communication and remote computing services from divulging the contents of stored communications. 18 U.S.C. §

2702(a)(1)–(2). It contains no exception for civil subpoenas. *Suzlon Energy Ltd. v. Microsoft Corp.*, 671 F.3d 726, 730 (9th Cir. 2011); *Theofel v. Farey-Jones*, 359 F.3d 1066, 1071–72 (9th Cir. 2004); *Crispin*, 717 F. Supp. 2d at 975–76. Requests 4, 5, and 7 seek uploaded files, communications, and stored deployment content, and must be quashed on that ground alone. Fed. R. Civ. P. 45(d)(3)(A)(iii). Non-content subscriber records may be disclosed voluntarily, 18 U.S.C. § 2702(c)(6), so at most Requests 1 and 2 could survive, and only after the balancing described above.

The subpoenas are also overbroad. They define "Website Operator" to include anyone who "authored content for" the site, which reaches contributors and right-of-reply correspondents who are not alleged to have done anything. ECF 3, Exs. B–C (Ex. A, Def. 7). Requests 3–8 go well beyond the "identity and contact information" BAM's own proposed order requested. *Id.*, Ex. A ¶ 2. The authorization of subpoenas to unnamed "third-parties," ECF 6 at 2, places no limit on the recipients. *See* Fed. R. Civ. P. 26(b)(1), 45(d)(1).

Finally, BAM served the requests, that it drafted before the Ex Parte Order, without conforming them to it. The served attachments are nearly identical to the ex parte exhibits, which were dated two days before the Ex Parte Order issued. *Compare* ECF 3, Exs. B–C, *with* ECF 14 at 6–8, *and* ECF 15 at 6–8. Furthermore, nothing in the Order or the subpoenas provides notice to the account holder before production. ECF 6; ECF 14, 15. BAM should have conformed their subpoenas to the Ex Parte Order before serving them.

## V. Alternatively, the Court Should Modify the Ex Parte Order.

If upon reconsideration the Court permits any discovery concerning the operator of thebammap.com, the Publisher asks that it be limited as follows:

(a) the providers, or a neutral, compare the account holder's name and email address against a list BAM supplies of persons bound by its agreements, and report only "match" or "no match," with no other production; or, at most, production limited to the account holder's name and email address (Request 1), with no production under Requests 2 through 8;

(b) such production made to the Court under seal for in camera review, not to BAM;

(c) disclosure of Publisher's identity to BAM only on noticed motion, with an opportunity for the Publisher to respond;

(d) any recipient of a subpoena seeking information about the operator must give the account holder notice and 21 days to move before producing anything; and

(e) if any information has already been produced in response to a subpoena in the interim, BAM must sequester, and not review or use it, pending further order.

## CONCLUSION

The Court should vacate the Ex Parte Order and quash the subpoenas to the extent they seek information identifying or concerning the non-party operator of thebammap.com, and enter the protective order requested above. Alternatively, it should modify the Ex Parte Orde as set out in Part V above.

## CERTIFICATION OF CONFERRAL

Under DUCivR 37-1(a), counsel for the Publisher certifies that they made reasonable efforts to resolve this dispute without court involvement. Counsel sent a written communication to BAM's counsel on October 9, 2026, identifying the subpoenas at issue and requesting to

confer. Counsel conferred by telephone on October 12, 2026, at 11:00 a.m. Mountain Time with Matthew J. Orme, counsel for BAM. On October 13, 2026, counsel set out each objection in writing and proposed a standstill and alternatives. As of filing, counsel for BAM have not responded.

DATED: October 14, 2026

THE LAW FIRM OF LEONARD J. FRENCH

/s/ Leonard J. French
Leonard J. French (admitted pro hac vice)

ALLEN, MITCHELL & ALLEN PLLC
Eric Allen

*Attorneys for Anonymous Non-Party Publisher of thebammap.com (Limited Appearance)*

**CERTIFICATE OF SERVICE**

I certify that on October 14, 2026, I filed the foregoing through the Court's CM/ECF system, which will send notice of the filing to all counsel of record, including:

Matthew J. Orme
Kyle K. Tucker
DENTONS DURHAM JONES PINEGAR PC
matt.orme@dentons.com; kyle.tucker@dentons.com
*Attorneys for Plaintiff*

I further certify that on October 14, 2026, I sent a courtesy copy by email to the subpoena recipients: Vercel, Inc., at daniel@zwillgen.com; and GoDaddy.com, LLC, at CourtDisputes@godaddy.com and by fax to its Compliance Department at (480) 624-2546.

/s/ Leonard J. French