**EXHIBIT B**

Letter from Leonard J. French to Matthew J. Orme dated October 13, 2026

Gmail

Leonard J. French <ljfrench@leonardjfrench.com>

## BAM Franchising, Inc. v. Does 1-10, No. 2:26-cv-00895-DBB-DBP (D. Utah)

**Leonard J. French** <ljfrench@leonardjfrench.com> Tue, Oct 13, 2026 at 7:42 PM
To: "Orme, Matthew J." <matt.orme@dentons.com>, "Tucker, Kyle" <kyle.tucker@dentons.com>
Cc: +14806242546@fax.tc, dmca@vercel.com, privacy@vercel.com, Eric Allen <eric@allenlawyer.com>
Bcc: Curtis Edmondson <jcedmondson@leonardjfrench.com>, +18882620632@fax.tc

October 13, 2026
**Via email (matt.orme@dentons.com, kyle.tucker@dentons.com)**

Matthew J. Orme, Esq. Dentons 111 South Main Street, Suite 2400 Salt Lake City, UT 84111

**Re:** *BAM Franchising, Inc. v. Does 1-10*, No. **2:26-cv-00895-DBB-DBP (D. Utah)** — subpoenas to Vercel, Inc. and GoDaddy.com, LLC (ECF 14, 15); conferral under DUCivR 37-1

**Dear Mr. Orme and Mr. Tucker**:

### Our call on October 12

Thank you for speaking with me on October 12. As before, I write on behalf of the anonymous publisher of thebammap.com (the "Publisher"), a non-party. I want to confirm what we discussed and set out, in one place, the Publisher's objections to the subpoenas BAM served on Vercel and GoDaddy on October 5 (ECF 14, 15).

Regarding BAM's concerns whether the Publisher is a BAM franchisee or is otherwise the source of the materials, and whether I might use this matter to obtain information to publish. On the first: the Publisher is not, and has never been, a BAM franchisee or employee, has never been a party to any agreement with BAM, and has never held a BAM account or login. On the second: I published commentary on YouTube about the BAM Franchising litigation until I was retained in this matter. I will not publish any communications or non-public information obtained in the course of this litigation.

I am glad to confirm that in a stipulated protective order limiting any information exchanged to use in this litigation. We also request your consent to a protective order allowing my client to stay pseudonymous as the Publisher.

I also confirmed the Publisher's position on sources and materials. The Publisher will not disclose its own identity or the identity of any source. The Publisher has already removed material and remains willing to discuss removing specific content that BAM identifies as objectionable.

### What we ask by Wednesday, October 14, at 12:00 p.m. MT

The subpoenas call for production on Monday, October 19, at 5:00 p.m. MT. To give the parties room to resolve this without emergency motion practice, we ask BAM to do the following by **Wednesday, October 14, at 12:00 p.m. MT**:

1. **Standstill.** Instruct Vercel and GoDaddy in writing to hold any production under the subpoenas until the Court rules on the Publisher's motion or the parties agree otherwise, and copy me on those instructions.
2. **Other subpoenas.** Identify any other subpoena issued under the Order (ECF 6), with its recipient and service date. I believe you already confirmed this to Mr. Belmont, but please confirm if/when anything changes.
3. **Sequestration.** Confirm whether BAM has received anything from either provider. If it has, BAM should sequester it, and not review or use it, pending the Court's ruling.

### The Publisher's objections

The Publisher objects to both subpoenas on the following grounds, each of which it intends to raise with the Court if we cannot resolve them.

1. **The subpoenas seek a non-party, not the defendants the Order authorized BAM to identify.** The Order permits discovery to "identify and properly serve an amended complaint that contains the defendants' true identities." ECF 6 at 2. The Complaint identifies the defendants as franchisees and other insiders bound by

confidentiality agreements (ECF 1 ¶¶ 14, 64–65) whereas it identifies the website operators as the "unauthorized third parties" to whom the defendants disclosed (¶ 67). It also distinguishes "the operator of thebammap.com" from "the individuals who provided" material to it (¶ 56). Yet every request in both subpoenas targets the "Website Operator." None mentions a defendant.

2. **The served requests are the pre-Order drafts, and they are overbroad.** The subpoenas served on October 5 are dated October 1, but their attachments are the document requests BAM drafted before the Order, bearing the same document numbers as Exhibits B and C to BAM's ex parte motion (UC_9183688.1 and UC_9183679.1; *compare* ECF 3 with ECF 14 and 15). BAM's proposed order asked only for "the identity and contact information for the unidentifiable Doe Defendants" (ECF 3, Ex. A). Requests 2 through 8 go far beyond that.
3. **The First Amendment and the reporter's privilege protect the Publisher and its sources.** Thebammap.com reports on a matter of public concern. Unmasking an anonymous speaker requires notice and a balancing the ex parte motion never presented and the Court therefore overlooked. *See Doe v. 2TheMart.com Inc.*, 140 F. Supp. 2d 1088, 1095 (W.D. Wash. 2001) (heightened standard for non-party speakers). Requests 3, 4, 5 and 7 (access logs, upload records, communications with the host, deployment records) would reveal who provided material to the Publisher. Before compelling that, *Silkwood v. Kerr-McGee Corp.*, 563 F.2d 433, 438 (10th Cir. 1977), requires BAM to show it has tried and failed to get the information elsewhere. The privilege standard is established under federal common law, see Fed. R. Evid. 501; Utah Rule of Evidence 509 reflects the same policy judgment and is independently applicable to the state-law dimensions of the action.
4. **BAM has not exhausted its own sources.** The Order's exhaustion finding cites Complaint ¶ 45 (ECF 6 at 2 n.7). That paragraph pleads that BAM has already "identified at least one current or former franchisee as a suspected source" from "Google Drive audit logs and system access records." *See also* ¶¶ 53–54, 58–59. BAM controls those logs. It has not subpoenaed Google, Slack or YouTube, the sources its Complaint says would identify the insiders (¶¶ 58–61).
5. **The Stored Communications Act bars Requests 4 and 7.** Uploaded files and stored deployment content are contents that a provider may not divulge to a civil litigant, and there is no civil-subpoena exception. 18 U.S.C. § 2702(a); *Suzlon Energy Ltd. v. Microsoft Corp.*, 671 F.3d 726, 730 (9th Cir. 2011). Request 5 is objectionable to the same extent it reaches stored contents.
6. **The definitions are overbroad.** The subpoenas seek information beyond the scope of the Complaint, which is directed at the identity of the Defendants. Also, "Website Operator" includes anyone who "authored content for" the site (Def. 7). That attempts to sweep in contributors and people who used the right-of-reply form, including the franchisee described in Complaint ¶¶ 36–37. "Published Materials" (Def. 8) includes the complete Brand Review presentation, which the Complaint never alleges thebammap.com published.
7. **No notice or time to object.** The subpoenas were served October 5 with production due October 19. The Order provides no notice to the account holder and no period to move before production. Orders permitting early discovery of anonymous account holders ordinarily provide both.

The Publisher reserves all other objections, including personal jurisdiction, and this letter is not a general appearance.

## A proposed resolution

BAM's stated goal is to find the insider it believes leaked the materials. The Publisher can help BAM rule the Publisher out without disclosing who it is. We propose:

1. **A sworn declaration.** The Publisher will sign a declaration under penalty of perjury that it is not, and has never been, a BAM franchisee or employee, has never been a party to any agreement with BAM, and has never held a BAM account or login. The Publisher's true name would be lodged with the Court under seal, so the declaration is fully enforceable, and not disclosed to BAM or its counsel absent further order of Court.
2. **A neutral match, if BAM wants verification.** BAM gives the providers, or an agreed neutral, a list of the current and former franchisees, employees and other persons bound by the Agreements. The provider or neutral compares the account holder's name and email against that list and reports only "match" or "no match" to both sides. Nothing else is produced. If there is a match, BAM may move for further relief on notice to the Publisher.
3. **Content review.** BAM identifies, by URL, any specific content it considers objectionable, with a short statement of why. The Publisher will consider each takedown request promptly and in good faith.
4. **Withdrawal of the subpoenas.** In return, BAM withdraws both subpoenas to the extent they seek information about the Publisher (or limits them to the match in item 2), and agrees not to seek the Publisher's identity or sources from any third party without leave of Court after reasonable notice to Publisher’s counsel.
5. **A protective order.** Any information exchanged would be used only for this litigation, under a stipulated protective order.

These terms are a starting point. I am open to other approaches that address BAM's concern about an insider without unmasking the Publisher or its sources.

## Closing

If BAM does not agree to the standstill by Wednesday, October 14, at 12:00 p.m. MT, the Publisher will file a motion to vacate or modify the Order, to quash or modify the subpoenas, and for a protective order, together with a motion for an interim stay. Please treat this letter and our October 12 call as the Publisher's conferral under DUCivR 37-1(a). I am available to talk again any time before Wednesday's deadline.

I am sending copies of this letter to counsel to Vercel and GoDaddy.

Sincerely,

Leonard J. French
The Law Firm of Leonard J. French
Counsel for the anonymous publisher of thebammap.com
(admitted pro hac vice)

cc: Eric Allen, local counsel to the Publisher; Vercel, Inc. (via email to dmca@vercel.com and privacy@vercel.com; GoDaddy.com, LLC (via fax to (480) 624-2546).