Matthew J. Orme (13323)
Kyle K. Tucker (19720)
**DENTONS DURHAM JONES PINEGAR P.C.**
111 South Main Street, Ste. 2400
Salt Lake City, UT 84111
(801) 415-3000
matt.orme@dentons.com
kyle.tucker@dentons.com

*Attorneys for Plaintiff BAM Franchising, Inc.*

**IN THE UNITED STATES DISTRICT COURT**
**DISTRICT OF UTAH, CENTRAL DIVISION**

| | |
|---|---|
| BAM FRANCHISING, INC., a Delaware corporation,<br><br>Plaintiff,<br><br>vs.<br><br>DOES 1-10,<br><br>Defendants. | **PLAINTIFF'S MEMORANDUM IN OPPOSITION TO ANONYMOUS NON-PARTY PUBLISHER'S EMERGENCY MOTION TO VACATE OR MODIFY ORDER GRANTING EXPEDITED DISCOVERY, TO QUASH OR MODIFY SUBPOENAS, AND FOR PROTECTIVE ORDER**<br><br>Case No. 2:26-cv-00895-DBB-DBP<br><br>Judge David Barlow<br><br>Magistrate Judge Dustin B. Pead |

Pursuant to DUCivR 7-1 and the Court's October 16, 2026 Order Granting Interim Stay of Production ("Stay Order"), Plaintiff BAM Franchising, Inc. ("BAM") submits this Memorandum in Opposition to the Anonymous Non-Party Publisher's Emergency Motion to Vacate or Modify

Order Granting Expedited Discovery (ECF 6), to Quash or Modify Subpoenas, and for Protective Order (the "Motion"), Dkt. No. 23, filed by the operator of thebammap.com (the "Publisher").[1]

## INTRODUCTION AND PREFERRED DISPOSITION

BAM alleges that one or more persons bound by confidentiality obligations disclosed BAM's Operations Manual, store-level financial analyses, and other internal franchise-system materials, and that those materials were published on thebammap.com and bamopsmanual.com. Compl. ¶¶ 11, 14–17, 63–97, Dkt. No. 1. The Court authorized limited, pre-conference subpoenas to the websites' hosting providers so that BAM can identify and serve the persons responsible. Order Granting Ex Parte Mot. for Expedited Disc. at 2, Dkt. No. 6 ("Discovery Order").

The Publisher now confirms that it operates thebammap.com and received information from persons who asked that their identities be kept confidential. Decl. of Anonymous Non-Party Publisher ¶¶ 2, 9, Dkt. No. 20 ("Publisher Decl."). Although BAM alleges that "one or more" of the Doe Defendants are current or former franchisees, employees, or other insiders, Compl. ¶ 14, that allegation neither forecloses the Publisher from being identified as a defendant nor alters the fact that the Publisher holds non-privileged information relevant to identifying the persons who supplied BAM's confidential information, *see id.* ¶¶ 44, 56. In posting the materials, the Publisher acknowledged that some were leaked and protected. *Id.* ¶ 27. A person who discloses a trade secret knowing or having reason to know that it came from someone who owed a duty of secrecy may

[1] For purposes of this Opposition, BAM refers to the "Publisher" by the proposed pseudonym and defined name used in the Motion to Proceed Under a Pseudonym, see Dkt. No. 18. BAM's reference to and use of the Publisher's pseudonym and defined name herein is not an admission that the Publisher is entitled to proceed as such under DUCivR 10-2. BAM reserves the right to respond to the Motion to Proceed Under a Pseudonym as provided by the applicable rules.

be liable for misappropriation. *See* 18 U.S.C. § 1839(5)(B)(ii); Utah Code Ann. § 13-24-2(2)(b)(ii). And the reporter's privilege the Publisher invokes is qualified, requires a balancing of interests that favors BAM, and should not override the express statutory protections afforded to BAM. *See Silkwood v. Kerr-McGee Corp*., 563 F.2d 433, 438 (10th Cir. 1977). The Court should deny the Motion in its entirety.

Alternatively, if the Court modifies the Discovery Order, it should adopt conditions that allow production to continue, including production limited to non-content identifying records, an attorneys'-eyes-only designation, and a use restriction. If the Court vacates the Discovery Order or quashes the subpoenas in any part, BAM requests that it do so without prejudice to BAM seeking leave to amend its Complaint and seeking further discovery on a showing of good cause.

## <u>BACKGROUND</u>

### A. BAM's Claims and Investigation

BAM franchises retail stores under the "Bricks & Minifigs" brand and maintains confidential franchise-system materials, including its Franchisee Training & Operations Manual, store-performance workbooks, internal communications, and a proprietary knowledge base. Compl. ¶¶ 9, 11. Beginning in May 2026, those materials were published on thebammap.com and bamopsmanual.com. *Id.* ¶ 17. Thebammap.com stated that BAM's Franchisee Field Guide & Talking Points was "obtained by this site," described BAM's store-performance workbook as the "whole leaked file," and described the source of that workbook as "protected." *Id.* ¶¶ 21–22, 25–27. Nonpublic information continued to reach the site after BAM's September 8, 2026 notice to Vercel, Inc. *Id.* ¶¶ 35, 38–42.

BAM's internal investigation, including review of Google Drive audit logs and system access records, has narrowed, but has not conclusively identified, the source or sources of the leaks. *Id.* ¶¶ 45, 53–55. BAM asserts claims for breach of contract and for misappropriation under the Utah Uniform Trade Secrets Act ("UUTSA") and the Defend Trade Secrets Act ("DTSA"). *Id.* ¶¶ 63–97. The Complaint alleges that each Doe Defendant is "legally responsible in some manner" for the events alleged, and alleges that "one or more" of them are franchisees, employees, or others bound by contract. *Id.* ¶¶ 2, 14.

**B. The Discovery Order and Subpoenas**

On September 30, 2026, the Court found good cause and authorized subpoenas to third parties, including Vercel, Inc. and GoDaddy.com, LLC (the "Subpoena Recipients"), "to obtain subscriber information, account records, IP address logs, deployment records and any other information that might allow BAM to identify and properly serve an amended complaint." Discovery Order at 2. BAM issued subpoenas to both Subpoena Recipients dated October 1, 2026, and served them on the Subpoena Recipients' Utah registered agents on October 5, 2026. Dkt. Nos. 14, 15. The subpoenas command production by October 19, 2026.[2] *Id.*

**C. The Publisher's Declaration**

The Publisher states that it operates thebammap.com, that it registered the site on June 18, 2026 to publish reporting concerning BAM, and that the Vercel and GoDaddy accounts are registered in its name. Publisher Decl. ¶¶ 2, 5, 7. It states that it is not and has never been a BAM

[2] The Court ordered a stay of production on October 16, 2026. Dkt. No. 29. BAM served the Stay Order on the Subpoena Recipients. *See* Dkt. No. 30. BAM has not received any document production in response to the subpoenas.

franchisee, employee, contractor, or party to any agreement with BAM. *Id.* ¶ 3. It also states that, "[i]n gathering information for publication, I have received unsolicited information from persons who asked that their identities be kept confidential, and as a publisher, I agreed to do so." *Id.* ¶ 9. The Publisher acknowledges BAM's September 8 and September 23, 2026 DMCA notices to Vercel. *Id.* ¶ 20. The declaration addresses only thebammap.com, although local counsel's pro hac vice motion described the client as the operator of both thebammap.com and bamopsmanual.com. Motion at 2 (citing Dkt. No. 13).

## ARGUMENT

### I. BAM HAS ESTABLISHED GOOD CAUSE, AND THE MOTION DOES NOT SHOW OTHERWISE.

If a party can show good cause for the "requested departure from usual discovery procedures," the Court can allow expedited discovery. *Living Scriptures v. Doe(s)*, No. 1:10-cv-0182 DB, 2010 WL 4687679, at *1 (D. Utah Nov. 10, 2010) (unpublished). Courts in this District routinely find good cause where expedited discovery is necessary to identify and serve unknown persons who used a website to engage in unlawful activity. *See Volkswagen Grp. of Am., Inc. v. Doe*, No. 2:22-cv-00438, 2022 WL 2702646, at *1 (D. Utah July 12, 2022) ("Courts routinely permit expedited discovery into the identities of defendants in cases involving claims . . . of unlawful activity"); *Crazy ATV, Inc. v. Probst*, No. 1:13-cv-00114-RJS-DBP, 2014 WL 201717, at *2 (D. Utah Jan. 16, 2014) (unpublished) (allowing limited discovery to identify Doe defendants). Good cause is shown where the plaintiff has a viable claim, cannot identify the responsible persons without discovery, and faces a risk that the evidence will be lost if discovery is delayed. *See Arista Records LLC v. Does 1-19*, No. 2:07-cv-00971-TS, 2008 WL 10874285, at *1 (D. Utah Jan. 11, 2008) (allowing limited discovery on third-party internet service providers to

ascertain identities of unknown defendants). BAM made each showing in its expedited motion, *see* Dkt. No. 3, and, as set forth below, the Motion does not show otherwise. The Court need not vacate or modify the Discovery Order.

## II. THE SILKWOOD FACTORS FAVOR DISCLOSURE UNDER APPROPRIATE CONDITIONS.

The Publisher invokes the qualified reporter's privilege and argues that its First Amendment interest in anonymity of a publisher and its sources outweighs BAM's interest in the discovery. Mot. at 8–9. The Tenth Circuit has recognized a qualified privilege for those who gather information for publication, but it has also made clear that the privilege is not absolute. *Silkwood*, 563 F.2d at 436–38. Before compelling disclosure, a court weighs (1) whether the party seeking the information has independently attempted to obtain it elsewhere and has been unsuccessful; (2) whether the information goes to the heart of the matter; (3) whether the information is of certain relevance; and (4) the type of controversy. *Id.* at 438. Each factor supports BAM.

### A. BAM Has Attempted to Identify the Source Through Other Means.

The Publisher argues that paragraph 45 of the Complaint shows that BAM has an alternative source in its own systems. Mot. at 8. Paragraph 45 alleges that BAM has identified "at least one" current or former franchisee as a *suspected* source. Compl. ¶ 45. BAM's investigation has narrowed, but has not conclusively identified, the source or sources. *Id.* ¶¶ 53–55. Audit logs and access records of BAM internal systems can show who accessed or downloaded a file within BAM's systems. They do not establish who then transmitted the file to a third party, whether more than one person did so, or whether the materials passed through other channels before publication. *See id.* ¶ 44. The information sought from the Subpoena Recipients is not available from BAM's internal systems or any other source. And the Tenth Circuit does not require exhaustion of all

available sources "but only an independent attempt to obtain the information elsewhere." *In re Bacon for an Ord. Pursuant to 28 U.S.C. § 1782 to Conduct Discovery for Use in Foreign Proc. v. Archer*, No. 17-MC-00192-KLM, 2018 WL 4467182, at *6 (D. Colo. Sept. 17, 2018) (unpublished) (citing *Silkwood*).

**B. The Information Goes to the Heart of BAM's Claims and is Relevant.**

Each of BAM's claims turns on who disclosed BAM's confidential and trade secret information, Compl. ¶¶ 64–67, 77–78, 90–91, which BAM has an interest in protecting. *See Ophir-Spiricon, LLC v. Mooney*, No. 1:11-CV-00161, 2011 WL 5881766, at *4 (D. Utah Nov. 23, 2011) ("Courts have recognized the public interest in the enforcement of contracts and preventing the misappropriation of trade secrets."). The Publisher acknowledges as much, arguing that the requested access logs, upload records, and deployment data "would reveal who provided material to the publisher." Mot. at 9. Records that may identify the people who disclosed BAM's trade secrets fall within the discovery BAM requested and the Court authorized, and within the identified potential Doe Defendants. *See* Discovery Order at 2; Compl. ¶ 14. This is the very information BAM needs to name and serve the Doe Defendants, and the Court granted the Discovery Order on BAM's showing that the hosting providers' records would assist in that effort. Discovery Order at 2.

**C. The Type of Controversy Favors BAM.**

This is a commercial dispute over trade secrets and contractual confidentiality obligations. Compl. ¶¶ 63–97. Even assuming the qualified reporter's privilege applies, it does not immunize the Publisher from applicable laws. *See Cohen v. Cowles Media Co.*, 501 U.S. 663, 669–70 (1991). As the Supreme Court noted, a publisher of news "has no special immunity from the application

of general laws. He has no special privilege to invade the rights and liberties of others." *Id.* at 670. And "the protection afforded to anonymous Internet users must be related to the importance of the type of speech." *Doe v. Shurtleff*, No. 1:08-CV-64-TC, 2009 WL 2601458, at *4 (D. Utah Aug. 20, 2009). The materials at issue include, among other things, BAM's complete 311-page Operations Manual, store-level sales and margin data, and internal Slack communications. Compl. ¶¶ 11, 19–26, 31–32.

The Publisher devotes much of its declaration to BAM's disputes with a YouTube creator and to related police and court proceedings. Publisher Decl. ¶¶ 7, 12–16; Mot. at 3. BAM's involvement in other proceedings or matters that have attracted public attention does not place every aspect of its business in the public domain, nor require BAM to tolerate disclosure of its information under an absolute protection of anonymity for the Publisher or the sources it admits supplied the confidential information. Public interest in BAM generally does not make BAM's operations manual, vendor relationships, and store-level financial data available to whoever can obtain them and post them on the internet.

The Court must also consider public policy beyond the First Amendment. Congress and the Utah Legislature have provided civil remedies for the misappropriation of trade secrets, including by persons who receive them from those who owed a duty of secrecy. 18 U.S.C. §§ 1836(b)(1), 1839(5); Utah Code Ann. § 13-24-2(2); *see Ophir-Spiricon, LLC*, 2011 WL 5881766, at *4. The reporter's privilege is qualified, not a legal monolith. *See, e.g., Brokers' Choice of Am., Inc. v. NBC Universal, Inc.*, 757 F.3d 1125, 1143 (10th Cir. 2014) (holding that a plaintiff was able to conduct discovery despite the invocation of a state law reporter's privilege mirroring the *Silkwood* factors). Any First Amendment interest the Publisher has must be weighed against the

statutory protections enacted to protect private entities like BAM. The public interest supports the enforcement of contractual confidentiality obligations and trade-secret protections.

## III. THE PUBLISHER'S OWN STATEMENTS SHOW THAT IT COULD BE A DEFENDANT UNDER THE TRADE SECRET CLAIMS.

The Motion also assumes that the operator of thebammap.com is a non-party whose identity cannot help BAM "identify and properly serve" any defendant. Mot. at 6–7. Although BAM's discovery efforts are directed at the franchisees and other insiders who owed BAM duties of confidentiality, *see* Compl. ¶¶ 14, 45, 53, the Complaint does not foreclose adding other third parties as defendants; it alleges that "*one or more*," not all, of the Defendants are bound by contract, *id.* ¶¶ 2, 14. And the DTSA and UUTSA reach anyone who discloses or uses a trade secret knowing or having reason to know it was derived through a person who owed a duty of secrecy, regardless of any contract with the trade-secret owner. *See* 18 U.S.C. § 1839(5)(B)(ii) (defining misappropriation as the "disclosure or use of a trade secret of another without express or implied consent by a person who . . . at the time of disclosure or use, knew or had reason to know that the knowledge of the trade secret was . . . derived *from or through a person who owed a duty to the person seeking relief to maintain the secrecy of the trade secret or limit the use of the trade secret*" (emphasis added)); Utah Code Ann. § 13-24-2(2)(b)(ii).

The Publisher's statement that it never signed an agreement with BAM, Publisher Decl. ¶ 3, therefore does not take it outside the claims. The Publisher confirms that it operates the site, *id.* ¶ 2, and received information from persons who asked to remain confidential, *id.* ¶ 9; the site described a BAM workbook as a "leaked file" from a "protected" source, Compl. ¶ 27; and the Complaint alleges that insiders provided materials "either directly to thebammap.com or to third

parties who then provide it to thebammap.com," *id.* ¶ 44. The Publisher has not shown that it could never be a defendant.

**IV. BAM WILL CONFORM ITS SUBPOENAS TO THE STORED COMMUNICATIONS ACT.**

BAM does not dispute that the Stored Communications Act ("SCA") prohibits the disclosure of certain stored communications, 18 U.S.C. § 2702(a)(1)–(2), and permits providers to disclose non-content subscriber records "to any person other than a governmental entity," *id.* § 2702(c)(6). To the extent the Court determines that any Requests in the subpoenas could be read to include information barred by the SCA, BAM will limit them to non-content records. Any further objection may be raised by the Subpoena Recipients, which may serve written objections and move to quash or modify a subpoena that requires disclosure of privileged or other protected matter. Fed. R. Civ. P. 45(d)(2)(B), (d)(3)(A)(iii).

The Publisher also contends that BAM served requests drafted before the Discovery Order without conforming them to it. Mot. at 10. BAM's expedited motion attached the proposed subpoenas and requests, and the Court granted the motion. Pl.'s Ex Parte Mot. for Expedited Disc., Exs. B–C, Dkt. No. 3; Discovery Order at 2. The served requests fall within the categories the Court reviewed and authorized and therefore conform to the Discovery Order.

**V. IF THE COURT MODIFIES THE DISCOVERY ORDER, IT SHOULD ALLOW PRODUCTION TO CONTINUE OR ANY RELIEF SHOULD BE WITHOUT PREJUDICE.**

Alternatively, if the Court modifies the Discovery Order, BAM proposes the following conditions that would allow production from the Subpoena Recipients to proceed.

- Production limited to non-content records sufficient to identify the account holder and any person with administrative access to the website, consisting of contact, registration, and

subscriber information (Requests 1–2), IP address and access logs associated with administering or posting content on the website (Request 3), and the non-content portions of Requests 7 and 8.

- Designation of all produced records as "Attorneys' Eyes Only" under the Standard Protective Order, DUCivR 26-2, so that the records are available only to BAM's outside counsel unless the Court orders otherwise.
- A restriction limiting BAM's use of the produced records to identifying and serving defendants, evaluating and seeking leave to amend the Complaint, and prosecuting this action, with no public disclosure of the Publisher's identity absent leave of Court.

BAM also opposes paragraph 3 of the Publisher's proposed order, which would bar BAM from serving any subpoena seeking information that identifies the operator "or any person who provided information to that website," absent further order. Dkt. No. 23-9 ¶ 3. That provision would extend beyond the Subpoena Recipients to any source of information about the persons who disclosed BAM's trade secrets, including third parties not before the Court or third-party providers of BAM's own internal systems. That request goes beyond any cognizable protection or interest the Publisher claims in this proceeding.

If the Court vacates the Discovery Order or quashes the subpoenas in any part, BAM requests that it do so without prejudice to BAM seeking leave to amend its Complaint under Rule 15(a)(2) and seeking further discovery, including discovery directed at the operator of thebammap.com, upon a showing of good cause. *See Qwest Commc'ns Int'l, Inc. v. WorldQuest Networks, Inc.*, 213 F.R.D. 418, 419 (D. Colo. 2003).

**CONCLUSION**

For these reasons, BAM respectfully requests that the Court deny the Motion. In the alternative, BAM requests that the Court modify the Discovery Order and the subpoenas to adopt the conditions set out in Section V, and that any order vacating the Discovery Order or quashing the subpoenas be entered without prejudice to BAM seeking leave to amend its Complaint and seeking further discovery upon a showing of good cause.

DATED: October 23, 2026

**DENTONS DURHAM JONES PINEGAR P.C.**

*/s/ Matthew J. Orme*
Matthew J. Orme
Kyle K. Tucker

*Attorneys for Plaintiff BAM Franchising, Inc.*

**WORD COUNT CERTIFICATION**

The undersigned certifies pursuant to DUCivR 7-1(a)(4)(D) that the foregoing Memorandum is 3,078 words long, according to the word processing program used to draft the Memorandum, excluding those items set forth in DUCivR 7-1(a)(6). This is within the 3,100-word limit for a response to a standard motion under DUCivR 7-1(a)(4)(D).

/s/ *Matthew J. Orme*

**CERTIFICATE OF SERVICE**

I hereby certify that on October 23, 2026, a true and correct copy of the foregoing was served via the Court's electronic filing system to all parties and counsel of record.

By: /s/ *Kristin Hughes*