Leonard J. French (admitted pro hac vice, ECF 16)
Pennsylvania Bar No. 312413
THE LAW FIRM OF LEONARD J. FRENCH
74 West Broad Street, Suite 400
Bethlehem, PA 18018
Telephone: (610) 466-5644
Email: ljfrench@leonardjfrench.com

Eric Allen (Utah State Bar No. 13486)
ALLEN, MITCHELL & ALLEN PLLC
2091 Murray Holladay Road, Suite 21
Salt Lake City, UT 84117
Telephone: (801) 930-1117
Email: eric@allenlawyer.com

Attorneys for Anonymous Non-Party Publisher of thebammap.com
**LIMITED APPEARANCE**

**IN THE UNITED STATES DISTRICT COURT**
**DISTRICT OF UTAH, CENTRAL DIVISION**

| | |
|---|---|
| BAM FRANCHISING, INC., a Delaware corporation,<br><br>Plaintiff,<br><br>vs.<br><br>DOES 1-10,<br><br>Defendants. | **ANONYMOUS NON-PARTY PUBLISHER'S REPLY IN SUPPORT OF EMERGENCY MOTION TO VACATE OR MODIFY ORDER GRANTING EXPEDITED DISCOVERY (ECF 6), TO QUASH OR MODIFY SUBPOENAS, AND FOR PROTECTIVE ORDER (ECF 23)**<br><br>**LIMITED APPEARANCE**<br><br>Case No. 2:26-cv-00895-DBB-DBP<br><br>District Judge David Barlow<br><br>Magistrate Judge Dustin B. Pead |

The anonymous non-party publisher of thebammap.com (the "Publisher"), appearing for the limited purpose of challenging discovery directed at its identity and reserving all defenses, including personal jurisdiction, venue, and joinder, submits this reply in support of its

Emergency Motion to Vacate or Modify Order Granting Expedited Discovery (ECF 6), to Quash or Modify Subpoenas, and for Protective Order (ECF 23) (the "Motion"), and in response to BAM's opposition (ECF 31) (the "Opposition").

## INTRODUCTION

The Court authorized early subpoenas so that BAM could "identify and properly serve an amended complaint that contains the defendants' true identities and capacities." ECF 6 at 2 (the "Ex Parte Order"). BAM's Complaint pleads who those defendants are: current or former franchisees, employees, and other persons "who obtained access to Plaintiff's Confidential Information pursuant to contractual obligations." Compl. ¶ 14; *see id.* ¶¶ 64–67.

The record now shows that the subpoenas cannot serve that purpose. The Publisher has sworn that no current or former BAM franchisee, employee, or contractor has ever had administrative or authorial access to thebammap.com, and that "[t]he Vercel and GoDaddy records will identify me and no one else." ECF 20 ¶ 5. The Opposition does not dispute either statement; it offers no evidence at all.

Instead, BAM concedes that the Stored Communications Act ("SCA") limits the subpoenas, ECF 31 at 10, and recasts the Publisher as someone who "could be a defendant" on a theory BAM has not pleaded. *Id.* at 9–10. That is far short of the showing required to unmask an anonymous non-party publisher, or to reach its sources through the records of its host. In light of the clarity that adverse-party presentation affords, the Court should vacate the Ex Parte Order and quash the subpoenas to the extent they seek the identity of, or information about, the operator of thebammap.com. If the Court permits any inquiry, it should be limited to a

confidential match that answers the question BAM's pleaded claims raise (whether the Publisher has or had privity of contract with BAM) without disclosing the Publisher's identity.

## ARGUMENT

### I. The Subpoenas Cannot Accomplish What the Ex Parte Order Authorized.

The Ex Parte Order rests on a single premise: that subpoenas to the website's hosting providers would yield "information that might allow BAM to identify and properly serve an amended complaint that contains ***the defendants'*** true identities and capacities." ECF 6 at 2 (emphasis added). The Opposition selectively quotes the Order only through "amended complaint," ECF 31 at 4, and describes its purpose as identifying "the persons responsible," *id.* at 2. The omitted words matter. The Order authorized discovery to find the defendants BAM sued.

The Opposition likewise summarizes paragraph 5 of the Publisher's declaration as stating that the Vercel and GoDaddy accounts are registered in the Publisher's name. ECF 31 at 4. Paragraph 5 says more:

> No current or former BAM Franchising, Inc. franchisee, employee, or contractor has, or has ever had, administrative or authorial access to thebammap.com. The Vercel and GoDaddy records will identify me and no one else.

ECF 20 ¶ 5.

That testimony, signed under penalty of perjury, stands unrebutted. BAM has filed no declaration with any of its five motions and memoranda in this case. ECF 3, 11, 28, 31, 32. On this record, enforcing the subpoenas would identify one person, the Publisher, and no insider who owed BAM a duty of confidentiality, which is the only kind of defendant BAM has pleaded.

Compl. ¶¶ 14, 64–67. BAM itself acknowledges that its "discovery efforts are directed at the franchisees and other insiders who owed BAM duties of confidentiality." ECF 31 at 9.

BAM's good-cause authorities do not reach this situation. Each allowed early discovery to identify an anonymous ***defendant*** accused of the wrong itself: an online seller of pirated copies, *Living Scriptures v. Doe(s)*, No. 1:10-cv-00182-DB, 2010 WL 4687679, at *1 (D. Utah Nov. 10, 2010) (unpublished); alleged copyright infringers, *Arista Records LLC v. Does 1-19*, No. 2:07-cv-00971-TS, 2008 WL 10874285, at *1 (D. Utah Jan. 11, 2008) (unpublished); persons alleged to have made false infringement complaints against the plaintiff, *Crazy ATV, Inc. v. Probst*, No. 1:13-cv-00114-RJS-DBP, 2014 WL 201717, at *2 (D. Utah Jan. 16, 2014) (unpublished); and the operator of an impersonating website, *Volkswagen Grp. of Am., Inc. v. Doe*, No. 2:22-cv-00438, 2022 WL 2702646, at *1 (D. Utah July 12, 2022) (unpublished). None authorized a subpoena to unmask a ***non-party*** publisher. And in *Arista*, the plaintiffs supported their application with a declaration. 2008 WL 10874285, at *1. BAM has offered no evidence whatsoever.

## II. An Unpleaded Theory, Unsupported by Evidence, Is Not Good Cause to Unmask a Non-Party Publisher.

BAM's principal response is that the Publisher "could be a defendant" under the Defend Trade Secrets Act and the Utah Uniform Trade Secrets Act. ECF 31 at 9–10 (citing 18 U.S.C. § 1839(5)(B)(ii); Utah Code Ann. § 13-24-2(2)(b)(ii)). That new hypothetical theory fails for two reasons.

*First*, the new hypothetical is not the case BAM pleaded or on which the Court relied in entering the Ex Parte Order. The Complaint names insiders bound by contract as the defendants and pleads thebammap.com as a third-party website to which those insiders disclosed. Compl. ¶¶

14, 17, 55–56, 67. BAM's request that any relief be "without prejudice to BAM seeking leave to amend its Complaint," ECF 31 at 11, only confirms that the hypothetical theory is not the pleaded case. Asserted good cause to identify the defendants BAM has sued is not good cause to investigate whether a non-party publisher "could" be sued later.

*Second*, a plaintiff who seeks to unmask an anonymous speaker as a potential defendant must do more than allege. Before authorizing such subpoenas, "courts require plaintiffs to make a preliminary showing that their complaint has merit." *Koch Indus., Inc. v. Does*, No. 2:10CV1275DAK, 2011 WL 1775765, at *10 (D. Utah May 9, 2011) (unpublished) (quashing subpoenas). That showing is evidentiary. The plaintiff "must adduce competent evidence," and that evidence "must, if unrebutted, tend to support a finding of each fact that is essential to a given cause of action." *Highfields Cap. Mgmt., L.P. v. Doe*, 385 F. Supp. 2d 969, 975–76 (N.D. Cal. 2005); *accord Dendrite Int'l, Inc. v. Doe No. 3*, 775 A.2d 756, 760–61 (N.J. Super. Ct. App. Div. 2001). Those standards protect the naming of Doe defendants. The bar is higher still for a non-party, because "the litigation can go forward without the disclosure of their identity." *Doe v. 2TheMart.com Inc.*, 140 F. Supp. 2d 1088, 1095 (W.D. Wash. 2001). BAM has offered no evidence to begin with, and its failure to make any evidentiary showing in response to the Motion underscores its inability to carry its burden. That showing is owed as to ***each*** person whose identity is sought. BAM has attempted none as to the operator, against whom it pleads no claim, nor as to any Doe it did sue.

Further, the Opposition states that the Publisher "acknowledged that some [materials] were leaked and protected." ECF 31 at 2. BAM's own allegation is narrower: the website described the source of one workbook as "protected." Compl. ¶ 27.

Moreover, BAM's own conduct undercuts the secrecy it claims exists: BAM published the location of the conference it now calls nonpublic, and articles on its Freshdesk portal could be viewed without logging in. ECF 20 ¶¶ 17–18.

## III. The *Silkwood* Factors Favor the Publisher.

The Opposition addresses the Publisher's privilege under the four factors of *Silkwood v. Kerr-McGee Corp.*, 563 F.2d 433, 438 (10th Cir. 1977): whether the party seeking the information "has independently attempted to obtain the information elsewhere and has been unsuccessful"; whether it "goes to the heart of the matter"; whether it "is of certain relevance"; and "[t]he type of controversy." ECF 31 at 6. Each favors the Publisher and protects its First Amendment rights.

### A. BAM Has Not Tried the Sources Its Own Complaint Identifies.

BAM's own authority recognizes that the privilege "may be overcome only with a clear and specific showing that the information is not obtainable from other available sources." *In re Bacon*, No. 17-mc-00192-KLM, 2018 WL 4467182, at *6 (D. Colo. Sept. 17, 2018) (unpublished). BAM has made no such showing. Its Complaint identifies three third parties whose records "may identify" the people who downloaded, copied, or supplied its materials: Google (for BAM's Drive), Slack (for BAM's internal workspace), and YouTube (for the channel that first published a BAM communication). Compl. ¶¶ 58–60. BAM has not subpoenaed any of them. It has represented that "the only subpoenas" it had served as of October 14 were on Vercel and GoDaddy. ECF 23-1 ¶ 5. And BAM already "has identified at least one current or former franchisee as a suspected source of the leaked Confidential Information based on internal investigation, including review of Google Drive audit logs and system access

records." Compl. ¶ 45. The Ex Parte Order's exhaustion finding relied upon that allegation. ECF 6 at 2 n.7. Yet BAM has not sought leave to subpoena *that* known, suspected leaker.

BAM now argues that its logs do not establish "who then transmitted the file to a third party." ECF 31 at 6. But neither would the hosting records which BAM seeks through the subpoenas it issued to Vercel and GoDaddy. According to the only evidence before the Court, those records would identify the Publisher, not any insider Doe defendant. ECF 20 ¶ 5. Nor would they reach the first disclosure BAM describes, which appeared in a YouTube video on May 28, 2026, Compl. ¶ 18, three weeks before thebammap.com was even registered, ECF 20 ¶ 7. In *Bacon*, where the petitioner had not shown an attempt to obtain the information from an obvious alternative source, the court found that this factor did not weigh in favor of disclosure. 2018 WL 4467182, at *7. Here, the unexplored alternative sources are named in BAM's own Complaint.

**B. The Publisher's Identity Is Not the Heart of BAM's Claims.**

BAM's claims turn on who breached duties of confidentiality owed to BAM. Compl. ¶¶ 64–67, 77–78, 90–91. The Publisher has never been a party to any agreement with BAM. ECF 20 ¶ 3. Its identity is neither the heart of BAM's claims nor even of "certain relevance" to them. *Silkwood*, 563 F.2d at 438. The records the subpoenas seek beyond identity (access and posting logs, upload records, communications with the host, and deployment records, Requests 3, 4, 5, and 7) would show how a publisher received its information. That is what the reporter's privilege protects, and "compulsory disclosure in the course of a 'fishing expedition' is ruled out." *Id.*; *see id.* at 437.

**C. The Type of Controversy Favors Protection.**

BAM calls this "a commercial dispute." ECF 31 at 7. Its own authorities show why that does not end the inquiry. *Cohen v. Cowles Media Co.* held that the First Amendment did not bar a source's claim against newspapers that broke their promise to keep his identity confidential. 501 U.S. 663, 665–66, 669–70 (1991). The Publisher made that kind of promise. ECF 20 ¶ 9. BAM is inviting the Court to compel the Publisher's breach of that promise.

BAM's *Doe v. Shurtleff* explains that the protection afforded anonymous speech is "related to the importance of the type of speech," and that "the First Amendment protects anonymity where it serves as a catalyst for speech." No. 1:08-CV-64-TC, 2009 WL 2601458, at *4 (D. Utah Aug. 20, 2009) (unpublished) (quotation and emphasis omitted). Thebammap.com reports on a franchisor's disputes with its customers and critics, a subject that has drawn national coverage, litigation in this Court, and public debate before a city council. French Decl. ¶ 7, Ex. E, ECF 23-6; ECF 20 ¶¶ 7, 12. Here, anonymity is the catalyst: the Publisher has already been chilled into withholding reporting because of the Ex Parte Order. ECF 20 ¶ 11.

*Brokers' Choice of America, Inc. v. NBC Universal, Inc.* does not help BAM. There, the court held that a defamation plaintiff could obtain a party defendant's unedited footage, but it stressed that "this is not a case involving confidential sources or confidential information." 757 F.3d 1125, 1142–43 (10th Cir. 2014). This case involves nothing else. The Colorado rule it distinguished permits compelled disclosure "only as a last resort." *Id.* at 1142 (quoting *Gordon v. Boyles*, 9 P.3d 1106, 1121 (Colo. 2000)).

None of the *Silkwood* factors favor vitiating the reporter's privilege. BAM has failed its substantial burden to show that the First Amendment protections the Publisher enjoys should be cast aside.

## IV. The Ex Parte Order Should Be Given No Deference.

"[W]hen the subject of a discovery order claims a First Amendment privilege not to disclose certain information, the trial court must conduct a balancing test before ordering disclosure." *Grandbouche v. Clancy*, 825 F.2d 1463, 1466 (10th Cir. 1987). Failing to do so is reversible error. *Id.* at 1464, 1466–67. The Ex Parte Order did not balance, because BAM presented nothing to balance. BAM's ex parte motion did not mention the First Amendment, the reporter's privilege, or the SCA, and it attached no declaration. ECF 3. The exhaustion finding rested on BAM's bare assertion that it had "exhausted its internal investigation methods," *id.* at 3, and on paragraph 45 of the unverified Complaint, ECF 6 at 2 n.7, which pleads an alternative source.

The Ex Parte Order is interlocutory, and "district courts generally remain free to reconsider their earlier interlocutory orders." *Been v. O.K. Indus., Inc.*, 495 F.3d 1217, 1225 (10th Cir. 2007). Now that the person whose rights are at stake has appeared, the Court should decide the question on the developed record. BAM also served the requests attached to its ex parte motion without change, including the content requests it now offers to withdraw. *Compare* ECF 3, Exs. B–C, *with* ECF 14 at 6–8, *and* ECF 15 at 6–8.

## V. BAM Concedes the Stored Communications Act; What Remains Is Identity.

BAM does not dispute that the SCA bars providers from divulging the contents of stored communications, and it backtracks by offering to limit the subpoenas to non-content records.

ECF 31 at 10. The Court should accept that concession and strike Requests 4 and 5 and the content portions of Request 7, rather than leave BAM to decide later which requests "could be read" to reach contents. *Id.*

What BAM would still obtain (registration and subscriber records, logs of "administration, management, or content posting on the Website," and the non-content portions of Requests 7 and 8) is identifying information. ECF 31 at 10–11; ECF 15 at 7–8. The subpoenas define the "Website Operator" to include anyone who "authored content for" the site, which on its face reaches contributors and people who used the right-of-reply form, including the franchisee described in the Complaint. ECF 15 at 7; Compl. ¶¶ 36–37. BAM's suggestion that the providers may raise any further objections, ECF 31 at 10, overlooks that the rights at stake belong to the Publisher, who has standing to assert them. *Transcor, Inc. v. Furney Charters, Inc.*, 212 F.R.D. 588, 590–91 (D. Kan. 2003).

## VI. BAM's Proposed Conditions Would Disclose What the Privilege Protects.

### A. Attorneys'-Eyes-Only Production Is Still Disclosure.

BAM proposes production of identifying records designated "Attorneys' Eyes Only" ("AEO") under the Standard Protective Order, with a use restriction. ECF 31 at 10–11. The Publisher's interest is anonymity from the party whose conduct it reports on. Disclosure to that party's counsel cannot be undone, and the uses BAM proposes include "evaluating and seeking leave to amend the Complaint," *id.* at 11, which contemplates naming the Publisher in a public pleading. An AEO designation built for competitively sensitive commercial information does not suffice to protect an anonymous speaker's identity.

**B. A Confidential Match Answers BAM's Stated Concern.**

BAM's counsel has stated that among BAM's concerns is whether the Publisher is a BAM franchisee or is otherwise the source of the materials. French Decl. ¶ 3, ECF 23-1. That question can be answered even to BAM's satisfaction without disclosing anyone's identity. If the Court permits any inquiry concerning the operator of thebammap.com, the Publisher asks that it be limited as follows:

(a) the providers lodge the account holder's name and email address with the Court under seal; BAM lodges under seal a list of the current and former franchisees, employees, and others bound by its agreements; and the Court compares the two in camera and reports only "match" or "no match";

(b) alternatively, the providers, or a neutral agreed by the parties, conduct the same comparison and report only "match" or "no match," with no other production;

(c) under either procedure, nothing is produced to BAM or its counsel, the sealed submissions are not served on BAM, and the account holder receives notice and 21 days to move before any production; and

(d) if there is a match, BAM is free to move for further relief on notice to the Publisher.

*See* Motion, Part V(a)–(d). The Opposition does not address this proposal.

**C. Paragraph 3 of the Proposed Order Can Be Narrowed.**

BAM objects that paragraph 3 of the proposed order would reach "third-party providers of BAM's own internal systems." ECF 31 at 11. The Publisher does not seek that. It proposes that paragraph 3 bar, absent leave of Court on noticed motion, only subpoenas seeking the

identity of the operator of thebammap.com, or seeking the identities of its sources from providers of services to that website, and that it state that nothing in it limits discovery from the providers of BAM's own systems. Revised and alternative proposed orders are submitted with this reply. If the Court grants relief without prejudice, as BAM requests, *id.*, any renewed request should be made by noticed motion, supported by evidence, with notice to the Publisher's counsel.

**VII. The Motion Concerns thebammap.com.**

The Opposition notes that the Publisher's declaration addresses only thebammap.com. ECF 31 at 5. This Motion and the Publisher's declaration concern thebammap.com, the only website the subpoenas name. ECF 14 at 6; ECF 15 at 6.

## CONCLUSION

The Publisher respectfully requests that the Court vacate the Ex Parte Order to the extent it authorizes discovery of the identity of, or information about, the operator of thebammap.com; quash the subpoenas to Vercel, Inc. and GoDaddy.com, LLC to the same extent; and enter the protective order requested in the Motion, as narrowed in Part VI.C. Alternatively, the Court should limit any inquiry to the confidential matching procedure in Part VI.B.

DATED: October 30, 2026

THE LAW FIRM OF LEONARD J. FRENCH

/s/ Leonard J. French
Leonard J. French (admitted pro hac vice)

ALLEN, MITCHELL & ALLEN PLLC
Eric Allen

*Attorneys for Anonymous Non-Party Publisher of thebammap.com (Limited Appearance)*

**CERTIFICATE OF COMPLIANCE**

I, Leonard J. French, certify that this reply contains 3,088 words and complies with DUCivR 7-1(a)(4).

/s/ Leonard J. French

**CERTIFICATE OF SERVICE**

I certify that on October 30, 2026, I filed the foregoing through the Court's CM/ECF system, which will send notice of the filing to all counsel of record, including:

Matthew J. Orme
Kyle K. Tucker
DENTONS DURHAM JONES PINEGAR PC
matt.orme@dentons.com; kyle.tucker@dentons.com
*Attorneys for Plaintiff*

I further certify that on October 30, 2026, I sent a courtesy copy by email to the subpoena recipients: Vercel, Inc., at daniel@zwillgen.com; and GoDaddy.com, LLC, at CourtDisputes@godaddy.com and by fax to its Compliance Department at (480) 624-2546.

/s/ Leonard J. French